WILLIAM MAXWELL, Appellant,

*vs.*

DUNCAN C. REED, Respondent.

APPEAL FROM MILWAUKEE COUNTY COURT.

An agreement contained in a power of attorney to enter judgment upon a promissory note, to the effect that the maker of the note and power expressly does, in consideration of the indebtedness, and of one dollar, "release, waive, and forego all manner of benefit or advantage of exemption of property, real or personal, from levy and sale on execution which might exist by any law now in force, or any future law," is null and void as against the policy of the law.

The omission in the execution of the words "except such as is by law exempt from levy and sale," or words of like import, confers no authority upon the officer to take property exempt. He is bound to know the law and to regard it.

Whether the debtor, having voluntarily turned out to the officer property exempt from seizure and sale on execution, can afterwards reclaim it. Quere ?

This case is stated somewhat in detail in the opinion of the court, but perhaps not sufficiently to give a full idea of the case.

The complaint set forth that on or about the 10th day of May, 1858, the defendant forcibly and wrongfully took from the possession of the plaintiff and carried away the following goods and chattels, that is to say—[here follows a particular description of the articles]—which goods and chattels were of the value of two hundred dollars; and the said plaintiff avers that at the time when the said defendant took from the possession of the said plaintiff the goods and chattels aforesaid, he, said plaintiff, was a mechanic, to wit, a tinsmith, residing in the city of Milwaukee, county of Milwaukee, State of Wisconsin, and that the said plaintiff, at the time aforesaid, at the city and county aforesaid, was carrying on his trade and business of tinsmithing, and the above named articles, goods

and chattels were his tools and implements and stock in trade, and used and kept for the purpose of carrying on his trade and business aforesaid; and the plaintiff avers that after said defendant so as aforesaid took possession of said tools, goods and chattels, the said plaintiff, to wit, on the 11th day of May, 1858, demanded possession of the same of the said defendant, and did then and there select the same as his property, exempt from levy and sale on execution, and the said defendant then and there refused to deliver possession of the same, or any part thereof; wherefore the said plaintiff demands judgment, &c.

The defendant below answered, alleging that said Maxwell being indebted to Sidney Shepard, gave him, said Shepard, a promissory note, dated October 4, 1857, for $600, payable thirty days after date, with ten per cent. interest; also, that he executed a power of attorney, authorizing any attorney to appear in any court for and on behalf of said Maxwell, and confess judgment on said note, and that in said power of attorney was the following agreement, to wit: "And in consideration of the indebtedness above recited, and of one dollar to me in hand paid, the receipt whereof is hereby acknowledged, I, said Maxwell, do hereby, in respect to the indebtedness above mentioned, and any proceeding at law or equity for the recovery thereof, release, waive and forego all manner of benefit or advantage of exemption of property, real or personal, from levy and sale upon execution which might exist by reason of any law now in force, or by any future law;" which power of attorney or instrument was under the hand and seal of said Maxwell, and bore date the same day as said note.

That on the 11th day of May, 1858, judgment was rendered on said note for $661.39, in and by the United States district court for the district of Wisconsin, in favor of said Shepard and against said Maxwell, and execution issued thereon in due form of law, directed to the marshall of said

district, and that said defendant, being the deputy marshal, by virtue of said execution, on the 11th day of May, 1858, seized said goods and chattels as the property of said Maxwell, whose property they were, and sold the same according to law.

At the September term, 1858, the cause was tried, and a verdict rendered in favor of the plaintiff for $199.65, upon which judgment was rendered.

On the trial, the plaintiff proved the taking of the property mentioned in the complaint, by the defendant, and that the same was of the value of about $220, and that the plaintiff was a mechanic, a tinsmith by trade, and that the tools and goods in the complaint mentioned, when so taken, were in his shop or store in the city of Milwaukee, and that the plaintiff carried on the business of a tinsmith, and that the tools were the tools used by him in and about his business as a mechanic, and that the tools and goods were all he had used in and about his shop and business.

Also, that immediately after they were so taken by the defendant, he made a demand of the same of the defendant, or of so much and many of them as were of the value of $200, as exempt by law from execution, and the defendant said he was indemnified, and refused to give them up.

On the part of the defendant, it was proved that he was deputy United States marshal for the district of Wisconsin, and that he took said property by virtue of an execution, as such deputy, in manner as set up in the answer, and the judgment, execution thereon, and taking of said goods by virtue thereof were proved, as set up in said answer; also, that said judgment was entered on what is called a judgment note and in the power of attorney, by virtue of which said judgment was entered, was the agreement respecting exempt property, as set forth in the answer in said action.

The court instructed the jury that the agreement contained

Maxwell vs. Reed.

in said power of attorney to release, waive and forego, in respect to said indebtedness, all manner of benefit or advantage of exemption of property from levy and sale upon execution was null and void, being against the policy of the law.

And the counsel for the plaintiff requested the court to instruct the jury that they might give exemplary damages. And the court did thereupon instruct the jury that such damages might be given in proper cases, but that it could only be done when the trespass was wilful and malicious, and accompanied with aggravating circumstances, making it outrageous in its character; that in this case the testimony was, that the defendant was an officer of the law; that after being indemnified, he had taken the property and sold it under an execution, and that if they should be able to find anything in these facts that satisfied them that this taking was wilful and malicious, and outrageous in its character, then that would bring it within that class of cases where the law allows exemplary damages.

To each of which instructions, the defendant then and there excepted.

The note on which said judgment was rendered in the United States district court, was dated October 2, 1857, for $600, for thirty days; and the execution issued on such judgment was in the usual form of executions from that court, and commanded the marshal to make the money thereon specified out of the goods and chattels of the defendant, &c., but had no clause therein saying "except such as are exempt from execution."

*Downer, Ladue & Jenkins,* for the appellant.

This case presents two questions for the consideration of the court:

1. Did the court below err in instructing the jury that the agreement to release, waive and forego all manner of benefit

or advantage of exemption of property from levy and sale on execution, was null and void ? We think it did. It must be conceded (and the authorities are many to that effect,) that a debtor may sell his property exempt from execution; he may mortgage it ; he may, when the sheriff comes with an execution, turn out his personal exempt property to the sheriff and authorize him to take and sell it to satisfy the execution. This right of the debtor thus to control his exempt property being admitted, it follows that the statute exempting certain personal property of the debtor from *forced* sale on execution, means that such property shall not be taken without the *consent* of the debtor. Consent *when ?* If the debtor surrenders his personal property to the sheriff to be sold on execution, and the sheriff proceeds to advertise and sell, can the debtor, at the day of sale, revoke his license or consent, and demand his property again ? Clearly the law will not sanction any such child's play as this. After the property is seized by the officer, it is too late for the debtor to recall his consent to the seizure. He may make any agreement concerning his exempt property, the same as he could if it was not exempt. He controls it; he sells it ; he makes valid agreements to sell it. He can mortgage or pledge it, and agree that it shall be sold at a future time at public auction to pay the debt. If he can make a valid mortgage upon it, he can agree that he will at a future time execute such mortgage, and if he can make such an agreement that is valid, he can agree to give a lien upon it in any other way, and such an agreement will be valid. If so this agreement to give a lien by permitting it to be seized on execution is valid. In fact, when the power of the debtor to make a valid sale of his exempt property is admitted, the right to agree to waive the exemption is admitted, as the *greater* includes the *less*. A power to sell, includes a power to mortgage, or to give or agree to give a lien in any other way. The whole theory of the law in regard to exemptions of personal

property, supposes that the debtor has the entire control over his exempt property, to do with it as he pleases, and that he is authorized to make in respect to it any agreement which he chooses, and that when made it is as valid and binding in respect to that property as any agreement respecting other property. This is a plain, common-sense view of the case ; nor are there any decisions to the contrary which we have been able to find, except *Howard vs. Lockwood*, 9 Howard's Prac. Rep., 547, and *Harper vs. Leal*, 10 id., 280. In the first case, the clause in a promissory note on which the decision is based is as follows : " Hereby waiving the benefit of all and every exemption of property from sale on execution under the laws of this State ;" and the court held that the *waiver* could not operate to subject property otherwise exempt, because it was not an *executed* waiver, and there could be *no right* to have property exempted from execution, unless there was an execution. It was also decided that the waiver did not operate as an *estoppel in pais.* We submit that the reasoning by which the court reached these conclusions is not even plausible.

In the case before the court, the agreement in respect to exempt property is full and complete, and if such property could not under and by virtue of such agreement be subjected to execution, then it could not by any other. In the case of *Harper vs. Leal,* the court makes an advance on the decision of its predecessor, and takes the bold ground, that " the agreement to waive all exemptions to property " is against public policy and void. This court will of course give such weight to the opinion of that inferior court as the argument embodied in the opinion deserves, and nothing more. The question comes to this court as a new question, which is to be decided on *principle,* and with due deliberation. And it appears to us that if the law is to stand as a guardian over the poor debtor, permitting him to dispose of his property in one way and precluding him from doing it in another, it should say so

distinctly. But until it does, the consent of the debtor, or an agreement to consent for a valuable consideration given at a period of time before it is seized, is as to his exempt property as valid as if given at the time the sheriff seizes it on execution.

2. The court below erred in instructing the jury that they might give exemplary damages if they were satisfied from the evidence that the taking was wilful and malicious, and outrageous in its character. This was an abstract instruction and tended to mislead the jury. The proof was that the defendant was a public officer, and being indemnified, by the direction of the plaintiff on the execution, and by virtue thereof, seized the property. There is nothing in all the evidence from which malice could be inferred. To give abstract instructions is error and cause of reversal. *Putney vs. Dummerston*, 13 Vt. Rep., 370; *Chouteon vs. Scorcy*, 8 Mis., 733; *Ukret vs. Coryell*, 5 Watts & Serg., 60; 8 Mis., 224; *Cobb vs. Fogleman*, 1 Iredell, 440.

It is probable this instruction had influence upon the jury, as the verdict is for a larger sum than the value of the property according to the defendant's evidence.

All of which is respectfully submitted.

*Lakin & Steever* for respondent.

1. The goods and chattels specified in the complaint, are exempt by law from execution. Old Rev. Stat., page 541, § 8.

2. The court did not err in instructing the jury, "that the agreement contained in the power of attorney, to release, waive and forego all manner of benefit or advantage of exemption of property," &c., "was null and void." The policy of the exemption laws is, to allow a person to retain certain things necessary for his support and that of his family. The law may, by construction, allow the debtor to turn out, *in presenti*, for sale on execution, even his necessary food and

clothing, or his tools and implements. But an agreement, to operate *in futuro*, by which the creditor seeks to bind the debtor to " release and waive all benefit or advantage of exemption," to the necessaries of life, which the debtor expects to have, as well as to those which he now has, is against the policy of the law. Admit the agreement to be valid: then, let the party sue for a breach of it, and obtain his satisfaction in the ordinary way, and not by overriding the exemption laws. To give the effect to such an agreement which the appellant seeks to give it, would put it into the power of a few sharpers to divest one-half of the community of their necessary food and clothing, and virtually to abolish all exemption laws. *Crawford vs. Lockwood,* 9 How. Prac. Rep. 547; *Harper vs. Leal, et al.* 10 How. Prac. Rep., 276. In the latter case the court says, that the agreement to waive all exemptions, &c., " must be regarded in the eye of the law as a hard, oppressive and unconscionable contract, and is totally void, as in contravention to the spirit of our statutes, and of public policy."

3. The instruction of the court on the subject of exemplary damages was correct, but whether it was or not, is immaterial, as it is apparent that the jury gave no exemplary damages. The plaintiff, in his complaint, alleges the value of his goods at $200, just the amount which the law exempts. The defendant, in his answer, justifies under his execution, and does not deny the value, as stated by the plaintiff. The value then, by the pleadings, stands admitted at $200.

Again, the defendant in the bill of exceptions, states that the plaintiff proved the taking of the property mentioned in the complaint, by the defendant, and that the same was of the value of two hundred and twenty dollars. It is idle then, to complain of being aggrieved by the instructions of the court, on the subject of damages, as the verdict was for $199,-65 only, being less than the amount proved.

*By the Court,* SMITH, J.   This was an action commenced by the respondent against the appellant, in the county court of Milwaukee county, for the wrongful taking and carrying away of certain goods and chattels, described in the complaint, and which were alleged to be the tools, implements, stock in trade, &c., of the complainant, as a tin-smith, in the city of Milwaukee, used by him as such, with the usual averment of demand of possession, and selection of the same as his property, exempt from levy and sale on execution.

The defendant justified the taking of the property mentioned in the complaint, on the ground that Maxwell, the complainant, being indebted to Sidney Shepard, gave him his promissory note, bearing date October 4, 1857, for $600, payable thirty days from date, with ten per cent interest; and also executed a power of attorney, &c., to confess judgment on said note, and that in said power of attorney was the following agreement, to wit:  "And in consideration of the indebtedness above recited, and of one dollar to me in hand paid, the receipt whereof is hereby acknowledged, I, said Maxwell, do hereby, in respect to the indebtedness above mentioned, and any proceeding at law or equity for the recovery thereof, release, waive and forego all manner of benefit or advantage of exemption of property, real or personal, from levy and sale upon execution, which might exist by reason of any law now in force, or by any future law."

That on the 11th day of May, 1858, judgment was rendered in the district court of the United States, for the district of Wisconsin, and execution thereon issued to the defendant below as deputy Marshal, by virtue of which he seized the goods mentioned in the complaint.

The cause was tried at the September term of the Milwaukee county court, 1858, and a verdict and judgment were rendered in favor of the plaintiff, for $199 65.

Maxwell vs. Reed.

From the bill of exceptions, it appears on the trial below the plaintiff proved the taking of the property mentioned in the complaint, the value about $200; that the plaintiff was a tin-smith, and that the goods, tools, &c., were used by him as such in and about his business in the regular prosecution of his trade, and were all that he had and used in and about the same. It further appears that immediately after the levy by the deputy Marshal, the plaintiff made a demand of the defendant for so much, or so many of the goods as amounted to $200 in value, on the ground that they were exempt from levy and sale on execution, but the defendant refused to deliver them.

The evidence being closed, the judge charged the jury, that the agreement contained in the said power of attorney, to release, waive and forego in respect to said indebtedness, all manner of benefit or advantage of exemption of property from levy and sale upon execution, was null and void, being against the policy of the law; to which the defendant excepted. These are the material facts in this case, and the question presented arises upon the instruction of the judge to the jury upon the validity of the agreement in the warrant of attorney to waive the benefit of exemption prescribed by the statute.

Did the court err in charging the jury that the agreement to waive all benefit of exemption was null and void? This is an important question, and we are not aware that it has been heretofore directly presented to us in respect to personal property. In [regard to mortgages upon real estate, (homestead) without the consent or signature of the wife, the statute is explicit.

It will be observed that the question is not here presented, whether a man may sell, or give away the articles of personal property which the law exempts from sale on execution; nor whether, should he voluntarily turn them out to the offi-

cer on execution, he could afterwards reclaim them. But it is whether a previous agreement to do so, made with his contracting creditor, is binding upon him, and will justify the officer in seizing them and holding and selling them upon the strength of such agreement, not directly adjudicated upon, in the judgment on which his execution was issued, and without any special authority given in such judgment.

The judgment in this case differs in no essential respect from those ordinarily entered upon warrants of attorney. There is no special authority given in the execution to take property, which in ordinary cases is not liable to levy and sale. Such an execution would be, indeed a novelty, and the officer might well hesitate to serve it, if indeed, a clerk should be found bold enough to issue it. What warrant then had the deputy marshal to levy upon these goods, exempt by law from seizure and sale? Was it the agreement in the warrant of attorney? That, as well as the note on which it was based, was merged in the judgment. Was it by virtue of any special authority contained in the process? We have been unable to find any in the record before us. Wherefore, then, may the officer look behind the statute? behind his process? and behind the judgment which gives vitality to his process? If there be any new forms of judgment record, or if writs of execution based upon contracts of this kind, they are not made apparent by the record in this case. Nothing is claimed on account of any peculiarity in this case, in respect of either. The case then, would seem to stand as between these parties, upon the process and the mode of its execution, the form of the judgment, its extent and character. The omission in the execution of the usual words, " except such (property) as is by law exempt from execution," however it may have been intended, confers no authority upon the officer. He is bound to know what property is exempt, and to regard the law in that behalf.

It is true that in the answer, the defendant sets up the agreement contained in the warrant of attorney. But there appears nothing in the judgment to show that this agreement was adjudicated upon, or that property, by statute exempt from execution, should be subject to sale upon the judgment rendered in this case ; nor is there any averment in the answer indicating such adjudication. Nor do we wish to be understood, that such a judgment rendered upon an instrument like the one in question, in the form of procedure here disclosed, would be conclusive upon the rights of the parties. We allude to the fact because it is quite obvious that the judicial mind was never brought to the consideration of the legal effect of such a stipulation on the original agreement, and hence we are unembarassed by any effect which such a consideration might have produced.

We think, therefore, that the agreement in the warrant of attorney gave no enlarged authority to the marshal, and did not in any degree extend the scope of his execution. It gave him no special authority to seize property exempt by law from levy and sale. But we do not feel inclined to leave the case here. We are of the opinion that the judgment of the court below was correct, and for the precise reason given, viz : that agreements of the kind set forth in the answer in this case, to waive all right of exemption, are null and void as against the policy of the law.

During the period of the ripening of the Territory into a State, the question of homestead, as well as personal exemption, underwent a very thorough discussion before the people, while passing through the transition, which was somewhat protracted. The idea underlying the ultimately developed sentiment of the people upon that subject, seems to have found an expression, perhaps an inadequate one, in the 17th section of Article 1st of the constitution, which is as follows :
" The privilege of the debtor to enjoy the necessary comforts

of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted."

It is, that the citizen is an essential elementary constituent of the State; that to preserve the State the citizen must be protected; that to live, he must have the means of living; to act and to be a citizen, he must be free to act and to have somewhat wherewith to act, and thus to be competent to the performance of his high functions as such. Hence it would seem, as no doubt it was, a matter of the gravest state policy to invest the citizen with, and secure to him those essential prerequisites, without which the State could not demand of him at all times his instant service and devoted allegiance.

If this be so, (and who can doubt it, in view of our history?) can it be supposed that not only unconstitutional guaranties, but statutory enactments, made in pursuance therewith, for the accomplishment of these high state purposes, can be made dependent upon the contracting will, or grasping genius of the individual debtor or creditor? Can the contracting parties not only repeal a statute, but upset the constitution itself?

However a man may sell or mortgage, or give away the great privilege with which the constitution and law of the State may have invested him, the State will not allow its process to be used to undermine and destroy one of the great bulwarks of individual freedom and manly citizenship, so carefully guarded by her fundamental law.

In regard to the matter of exemplary damages, it is unnecessary to make any remark, as no such damages appear to have been given.

Judgment affirmed with costs.