DREUTZER *vs.* BELL et al.

APPEAL FROM CIRCUIT COURT, WAUPACCA COUNTY.

Heard January 25.]                    [Decided May 4, 1860.]

*Exemption—Homestead—Frauds—Creditors.*

A homestead being exempt from forced sale upon execution, it matters not whether the title remain in the execution debtor or be held by his wife as his trustee.

A deed of the homestead made by the execution debtor, whether made with intent to defraud creditors or not, is still valid as to them, so far as the homestead is concerned; such property was not liable to seizure on execution either before or after the fraudulent conveyance.

Where B. deeded his homestead to P. and P. deeded it to the wife of B., and B. still resided upon it, he did not thereby lose his right of exemption in the homestead.

This was an action commenced by O. E. Dreutzer, who, on the 14th of September, 1858, had, by an order of court, been appointed receiver of the property of Charles L. Bell, against Bell and his wife, and William Hibbard, to recover possession of four lots, in the village of Waupacca.  The complaint shows that the plaintiff had been appointed under proceedings supplemental to executions in favor of Boynton & Smith against Bell.  The wife of Bell answered, that the

lots had been bought in · the first instance with her money, and the deed ought to have been taken in her name, for all the lots; that the defendants had their homestead on the lots; and also denied all fraud in the transfer of the lots to her. On the trial, the circuit judge instructed the jury, who found: " That the defendants, Charles L. Bell and Harriet Bell, are husband and wife; that prior to the conveyance by Bell and wife to E. I. Putnam, the title to the lots 2 and 9, and 3 and 8, in block ' L," village of Waupacca, was in the defendant, Charles L. Bell; that the conveyance to E. I. Putnam was made without consideration; also that from E. I. Putnam to Harriet Bell; and were made for the purpose of placing the title to said lots in Mrs. Bell. That the conveyance of lots 8 and 9, and three rods off the south side of lot 3, part of the premises conveyed as above to E. I. Putnam and by him to Mrs. Bell, by Harriet Bell to William B. Hibbard, was made without consideration, and for the purpose of placing the same beyond the reach of the creditors of the defendant, Charles L. Bell. That the defendant, Charles L. Bell, with his family, for five or six years last past, and up to the time of the said conveyance to Putnam, had occupied and resided on said premises, and has since that time and now does reside thereon, having a dwelling-house, stable, &c., on lot 2, and perhaps a portion of lot 3; that said defendants, Bell and wife, while said dwelling-house was being constructed, and at the execution of the deed to Putnam, as aforesaid, claimed the said premises as a homestead; that the lots in question are 115½ by 65½ feet. That the defendant, Charles L. Bell, was indebted as charged in the complaint herein, at the time of the several conveyances hereinbefore mentioned. That the plaintiff sued as a receiver appointed, &c., and that executions were issued and returned as charged in that behalf in said complaint; therefore, the court finds the following conclusions of law:

" 1st. The lot No. 2, and sufficient off of the south side of lot 9 to make, in all, one fourth of an acre, being the homestead of the defendant, Bell, could not be the subject of the fraudulent sale as to creditors. The rights of creditors have not been interfered with; the property has not been appropriated to any other purpose than that of a homestead. The object of that conveyance was, not to place it beyond the reach of creditors, but for greater security; that it should remain as a homestead for the family. The creditors of Bell

have no right to complain; their security has not, by that conveyance, so far as the homestead is concerned, been lessened or diminished.

"2nd. The conveyance of Bell and wife to E. I. Putnam, and Putnam to Mrs. Bell, and Mrs. Bell to William B. Hibbard, of lots 8 and 9, so much of 3 as does not interfere with the admeasurement of the homestead exemption, was and is fraudulent and void as to the creditors of the said Charles L. Bell, and the premises thereby conveyed are subject to be sold for the debts of the said Bell."

Whereupon judgment was entered up accordingly; and from which the plaintiff appealed.

*Finches, Lynde & Miller,* for the appellant. To entitle a party to a homestead as against an execution creditor, he must *select* his homestead. *People vs. Plumsted,* 3 Gibbs, 469, Rev. Statutes, 785, § 25.

2. The premises were not, at the time of the rendition of the judgment, *owned and occupied* by Charles L. Bell. R. S., 785; *Wisner vs. Farnham et al.,* 2 Gibbs, 475; *Chamberlain vs. Lyell,* 3 id., 457; *Hoyt vs. Howe,* 3 Wis., 755.

3. Mrs. Bell was merely the trustee of her husband, and the property in her hands was liable for his debts. R. S., 529, §§ 7 and 8; *Garfield vs. Hatmaker,* 15 N. Y., 476; *Henchfeldt vs. George,* 6 Mich., 457.

*M. H. Sessions,* for the respondent.

*By the Court,* COLE, J. The evidence in this case clearly shows that the respondent, Bell, with his family, for five years previous to, and up to the time of the conveyance to Putnam—which is mentioned in the pleadings and testimony—had occupied and resided upon lot 2, and the north portion of lot 3, and that at the time of the commencement of this action, he still resided upon those premises, having his dwelling home and outhouses thereon; and that he claimed the premises as his homestead. In view of these facts, the only question we have to consider is, was the benefit of the homestead exemption law lost and forfeited by Bell and wife conveying the homestead to Putnam, and by Putnam and

wife conveying the same back to Mrs. Bell. We shall assume, what is pretty evident from the testimony, that those conveyances were voluntary, and that nothing really valuable passed from Putnam to Bell, or from Mrs. Bell to Putnam, at the time they were made and executed. From the whole case it abundantly appears, that the object of the parties in making these conveyances was, to vest the legal title of the homestead in Mrs. Bell, under the impression, or idea, that by so doing, it would be more secure from the creditors of Bell. This was certainly a mistake, as the homestead, by the law of this state, is not subject to forced sale on execution, or any other final process of a court, and therefore could not be reached by those creditors. It appears, however, that the respondent thought otherwise; and supposing that a direct conveyance of the homestead by him to his wife would be invalid, but that it might be conveyed to a third party, and by that person re-conveyed to his wife, thus placing the property in a better situation, as respects his creditors, than it would be had the title remained in him. Although he has never ceased to occupy the premises as his homestead—always has claimed it as such—still, the question presented by the record is, whether by the idle and entirely unnecessary means which he resorted to for the declared purpose of securing the same to himself and family, he has deprived himself of the benefit which the law gave him.

It is insisted by the counsel for the appellant, that these conveyances were made with the intent and design of defrauding creditors; and that whether they are fraudulent or valid, so far as the exemption of the property was concerned, the homestead was liable to seizure and sale by the creditors, as soon as the conveyances were made. It is not very clear to our minds, how these conveyances can be said to be fraudulent as to the creditors of Bell. Suppose they had never been made, could the creditors have seized and sold the

homestead? Certainly not. Undoubtedly, when a debtor conveys away property which the law subjects to the payment of his debts, for the purpose of putting it beyond the reach of his creditors and the process of a court, then equity will treat such a conveyance void, and will lay hold of the property, and deal with it as though the title remained in the grantor. This is familiar doctrine. But that is not this case. Here, it must be admitted that the creditors could not sell the homestead had the title remained in Bell. Does the circumstance that the title has passed around into his wife, place them in a better situation in respect to it, than when the whole legal and equitable estate was in him? We cannot see that it does. Some stress is laid upon the language of the statute, which declares that a homestead, consisting, &c., "*owned* and occupied by a resident of this state," &c., shall be exempt. It is insisted that the word "owned" is used in a restricted sense in this statute, and means the person having both the legal and equitable title to the homestead. This construction of the law appears to us to be too narrow and restricted. It has not been supposed that a person who had mortgaged his homestead was not an owner thereof within the meaning of the act. In the case under consideration, the respondent, Bell, is the actual owner of the property. The entire equitable estate is in him, although the legal title may be vested in his wife. It is true, the appellants contend, that for the purpose of passing the title from Bell, the conveyances were good and effectual, but as respects the creditors, were void. But, as already observed, the entire case shows that the object in making the conveyances was, to vest the title to the homestead in Mrs. Bell, under the idea, that the respondents would be more fully and completely secured in the enjoyment of it than though such conveyances were not made; and although the parties acted under a mistake as to the necessity for the conveyances, still we do not think because

La Crosse and Milwaukee R. R. Co. vs. Vanderpool.

they made this mistake, it should be attended with the consequences which the appellants contend for.

We see no error in the judgment of the circuit court, and it must therefore be affirmed.