## CARHART and another vs. HARSHAW.

*(1, 2) Power of owner of exempt property to sell it or give it away.  (3) Whether certain instructions on that subject misleading.*

1. The owner of property exempt from forced sale may sell it or give it away; and when the title has in fact passed to the vendee or donee, the property is not subject to execution for the former owner's debts, whatever may have been his motive in the sale or gift.

[2. The fact that, after a sale or gift valid when made, the debtor, from some change in his circumstances, could no longer hold the property as exempt if the sale or gift were avoided, is immaterial.  Per COLE, J.]

Carhart and another vs. Harshaw.

3. Certain instructions in this case (for which see the opinion) *held* not calculated to mislead the jury — as by leading them to believe that a merely colorable gift of property exempt as a professional library would be good, though really designed to enable the debtor still to hold it as merchandise after he had ceased to be entitled to any such exemption.

[RYAN, C. J., dissents as to the last point, being of opinion that the question whether the gift was *bona fide* or merely colorable, was not properly submitted to the jury, the charge on that subject being either incorrect or misleading; and he discusses the question what fraudulent intention in a gift of exempt property will avoid the gift as against creditors.]

APPEAL from the Circuit Court for *Winnebago* County.

Replevin, for books. In 1872, Dr. J. W. Carhart was indebted to one Gleason in the sum of $334 on a New York judgment. Prior to October, 1876, he had been a minister or clergyman of the Methodist Episcopal-Church, residing at Oshkosh, and had for some time owned and used a private and professional library, of the value of $200. In October, 1876, he was elected a presiding elder of said church, and continued to reside at Oshkosh; and after such election he claims to have given the books contained in said library to his two minor children, *Minnie T.* and *Edwin E. Carhart*, the plaintiffs in this action, who were keeping a book-store in their own name in what was known as the "Methodist Church Block." The books had been previously kept in a room known as "the study" in the Methodist church (which appears to have been a part of the same block); and they were taken down from the shelves of the study, and put upon the shelves of said store, where such of them as were not sold, remained until levied upon by defendant.

In June, 1877, judgment was rendered in Winnebago county against Dr. Carhart on the New York judgment above mentioned; and defendant, as sheriff, levied an execution issued on such judgment, upon the books above described, still remaining on the shelves in plaintiffs' store. Plaintiffs thereupon commenced this action, obtaining and retaining possession of the books.

At the time of this gift, *Minnie T. Carhart* and *Edwin E.*

*Carhart* were respectively seventeen and twelve years of age; but the evidence tended to show that they were carrying on a printing and bookselling business in their own name, before, at and after the times of said alleged gift, and of the levy made by defendant; and that they lived with their father and paid no board, but paid for their clothing from the proceeds of the printing office and book store.

Defendant admitted that the books, just previous to the alleged gift to plaintiffs, were the property of Dr. Carhart and exempt from execution as his private library. After all the other proofs were in, defendant called Dr. Carhart as a witness, and offered to show that, at the time of such alleged gift, he was, to plaintiffs' knowledge, in debt beyond his means to pay; but the evidence was ruled out.

The following instruction, among others, asked by defendant, was refused: "In considering these questions of fraudulent arrangements to defraud creditors, the facts and actions of parties as proven are of more weight than the statements of parties charged with fraud, given on the trial."

The court charged the jury, in substance, as follows: "It being conceded that these books were exempt as Dr. Carhart's library, he had a right to sell them to any one for a valuable consideration, and, when so sold, they could not become liable to seizure and sale for his debts. He had also the right to donate them to his children in consideration of his love and affection for them; and if that gift was followed by an actual manual delivery to them, the property continued to be exempt from sale on execution by his creditors. . . . I have taken away from your consideration all questions of fraudulent transfers, so far as the sale or gift to his children is concerned; but, understand me, there must have been a gift, and a manual delivery of the property to his children. . . . I don't say what might be the case if he had acquired another library, and this gift had been attacked for the reason that it was a mere cover to enable him to hold more property than the law exempts. There is no such question in this case. . . . If the debtor has a book-store, or opens a place for the sale of books, and

himself puts his library upon the shelves for sale in that book-store, as a portion of his stock in trade, then they are no longer exempt from seizure and sale as his library; he has made it stock in trade, and must claim the exemption, if at all, by virtue of the statute giving him exemption for a portion of his stock in trade. But there is no pretense here that Dr. Carhart claims these books as a portion of his stock in trade, because he claims that he was not carrying on any such business; therefore the question for you is, whether he did change his library into stock in trade, or gave it to his children in consideration of his love and affection for them, by actual manual delivery. If that was Dr. Carhart's store, carried on for his benefit, he being the owner of the property, the books in trade, but carried on in the name of his children as a cover to keep the property from his creditors, then these books were liable to the execution. . . . The books being exempt to Dr. Carhart prior to any transfer, or pretended transfer, he had the right to sell or donate them, and it is perfectly immaterial whether he designed to defraud creditors or not. But if he changed the library into stock in trade himself, and had these books with others for sale as stock in trade, and not for sale as a library, then they were no longer exempt as a library."

Portions of the charge excepted to are quoted *verbatim* in the opinion of Mr. Justice COLE.

There was a verdict and judgment for the plaintiffs; and defendant appealed.

For the appellant, a brief was filed by *Hooper & Buxton*, and the cause was argued orally by *Mr. Hooper*. They contended, 1. That the court erred in refusing the instruction asked by defendant and above recited. The instruction was good law (*Jarvais v. Moe*, 38 Wis., 448), and it was pertinent to the evidence which tended to show that the title to the books was in fact still in Dr. Carhart. 2. That the court erred in instructing the jury that Dr. Carhart had a right to sell the books for a valuable consideration, there being no evidence or pretense of such a sale. It is error to mislead jurors by causing them to infer the existence of evidence which there

was no attempt to make.  *G. & C. U. Railroad v. Jacobs*, 20 Ill., 478, 485; *Ewing v. Runkle*, id., 449, 463, 464; *County Court of Calhoun County v. Buck*, 27 id., 441, 443; *American v. Rimpert*, 75 id., 228; *Walters v. Railroad Co.*, 41 Iowa, 71, 76, 77; *Swank v. Nichols' Adm'r*, 24 Ind., 199, 201; *Jeff. Railroad Co. v. Swift*, 26 id., 459, 472; *Mayes v. Farish*, 11 B. Mon., 38, 41; *Hewitt v. Begole*, 22 Mich., 31, 34; *Snyder v. Wilt*, 15 Pa. St., 59, 64; *Am. Trans. Co. v. Moore*, 5 Mich., 368, 380; *Hopkins v. Fowler*, 39 Me., 568, 570; *Gillet v. Phelps*, 12 Wis., 399.   3. That the court erred in charging that a debtor has a right to sell or donate exempt property, and that it is immaterial whether or not, in so doing, he designs to defraud creditors.   The true doctrine is, that the transfer of exempt property is voidable for fraud, but where, if the transfer is avoided for the fraud, the property will *still remain exempt in the hands of the debtor*, the court will not interfere.   In support of this view, counsel cited, and analyzed at length, *Dreutzer v. Bell*, 11 Wis., 114; *Barker v. Dayton*, 28 id., 367, 382; *Hibben v. Soyer*, 33 id., 322; *Anthony v. Wade*, 1 Bush, 110; *Kuevan v. Specker*, 11 id., 3; *Lishy v. Perry*, 6 id., 515; *Herschfeldt v. George*, 6 Mich., 456; *Smith v. Rumsey*, 33 id., 190; *Stevenson v. White*, 5 Allen, 148, 149; *Rayner v. Whicher*, 6 id., 294; *Mannan v. Merritt*, 11 id., 582; *Beals v. Clark*, 13 Gray, 18; *Piper v. Johnston*, 12 Minn., 60; *Woodworth v. Paige*, 5 Ohio St., 70; *Cox v. Shropshire*, 25 Tex., 113; *Currier v. Sutherland*, 54 N. H., 475; *Getsler v. Saroni*, 18 Ill., 511; *Chambers v. Sallie*, 29 Ark., 407.

For the respondents, there was a brief by *Hauser & Colman*, and oral argument by *Mr. Hauser*.   They contended that, the books being exempt as a part of Dr. Carhart's library, he had a right to donate them to his children, and they would not thereby become subject to seizure on execution by his creditors *(Bond v. Seymour*, 2 Pin., 105; *Dreutzer v. Bell*, 11 Wis., 114; *Pike v. Miles*, 23 id., 164; *Vaughan v. Thompson*, 17 Ill., 78; *Cole v. Green*, 21 id., 104; *Washburn v. Goodheart*, 7 Cent. L. J., 248); and that the question whether they were so donated was fairly submitted to the jury.

COLE, J. Notwithstanding the ingenious criticisms of the acute and learned counsel for the defendant upon the charge of the circuit court, a majority of the court think there was nothing in the charge which could have misled the jury to the prejudice of his client. The portion of the charge to which the first exception was taken, reads as follows: " I say to you as a proposition of law, it being conceded that they were exempt as his library, that he had the right to sell them for a valuable consideration to any one, and that, when sold for a valuable consideration to a purchaser, they were still not liable to seizure and sale upon execution for his debts." It was a conceded fact in the case that the library in question was Dr. Carhart's professional library at the time he claimed to have given it to his children, the plaintiffs in the action, and that he might then have held it as exempt by statute as his private library. But it is objected that the above charge was not applicable to the facts, and was likely to mislead the jury, because there was no pretense of a sale of the library for a valuable consideration. It is certainly true that the plaintiffs claimed the library by way of gift, and not by purchase from their father. But in the charge, as well as in some of the instructions asked by defendant, it was assumed that a transfer by gift and one by sale are subject to and controlled by the same rules of law, and this doubtless will account for this language in the charge. For instance, in the sixth request asked by the defendant we find these words: " The question for the jury to determine is, Was this sale, or transfer by gift, fraudulent and void as to existing creditors," etc. The same form of expression is used in the second request, where the transfer is spoken of as a sale. So, while it may be true that the plaintiffs did not claim to have purchased the library, yet it seems impossible that the jury could have been misled by what the court said in regard to a sale. In the same connection the court added this: "He (Dr. Carhart) also had the right to donate them for a consideration, and the love and affection which the law presumes he bears for his children is a sufficient consideration. He had the right, then, in consideration of his love and affec-

tion for his children, to donate them to his children, give them to them, and if that gift for this consideration was followed by an actual manual delivery of the property to his children, it was still, and continued to be, not liable to seizure and sale upon execution by creditors. So that I have taken away from your consideration all questions of fraudulent transfers, so far as the sale or gift to his children is concerned." Also, in the subsequent part of the charge, the court made use of this language: "Therefore I say, if you find there was a gift of these books to his children, followed by a manual actual delivery, in consideration of the love and affection which the law presumes the parent bears to the child, it is a good transfer, and thereafter the property is not liable for his debts any more than it was prior to the date of the gift." These portions of the charge were likewise excepted to. Now the idea advanced or proposition laid down in this charge, as we understand it, is this: A parent may, in consideration of love and affection, make a valid gift of exempt property to his child, and when the gift is completed by a manual delivery of the property, the child will hold it as against the creditors of the parent. In case of nonexempt property, the debtor would not be permitted to make such a disposition of his property to the prejudice of the rights of his creditors. The law requires a man to be just before he is generous, and the fact that the transfer was without consideration would be deemed a strong, if not a conclusive, badge of fraud. But in case of exempt property, which the creditor has no right in law to subject to the payment of his debts, the rule is otherwise. In respect to such property, the parent may, in consideration of love and affection, donate it to his child; and where the gift is followed by actual manual delivery of the property to the child, it is placed beyond the reach of the creditors of the parent. In other words, fraud cannot be imputed to such a transfer of property merely because it is voluntary or without consideration. This is the meaning of the charge, as we understand it; and with this interpretation it is not fairly open to criticism. The court is evidently speaking of a sale or gift of exempt property which actually passes

the title and ownership to the vendee or donee as against the parent, and where the child is clothed with full dominion and control of the property.

There is another passage in the charge, which was excepted to, and which was much commented upon in the argument made by defendant's counsel. It is the following: " Being so exempt, I say to you, the law is, he had the right to sell them, he had the right to donate them, and it is perfectly immaterial whether he designed to defraud creditors or not; the property being exempt, the disposal of them could not defraud the creditors, because the creditors had no right to them." This, it is said, was equivalent to laying down the broad, naked proposition, that in no case, under no circumstances, can fraud as against a creditor be predicated upon a transfer of exempt property by a debtor. So that it would logically follow from this doctrine, that if. an unscrupulous debtor should make a mere colorable sale or gift of exempt property to a friend, to be held in secret trust for his own use, then acquire additional exempt property as far as the funds of his creditors in his hands would enable him to do, and make a like disposition of it to another friend, to be held in the same manner, and continue these transactions indefinitely, he could always cover up his property and keep it from his creditors. This is not a fair inference or deduction from the charge, nor does the doctrine laid down by the circuit court lead to any such mischievous and absurd consequences. All through the charge the court is treating of an absolute sale or gift, not a mere colorable one; of a sale or gift where the title and ownership of the property passes to the vendee or donee. It is the same as though the court had told the jury that a debtor has the right to make an absolute sale or gift of exempt property to a child or friend, and that the motive with which such a transfer was made was immaterial, or of no consequence to his creditor. The doctrine of the charge is the same in principle as that stated by Mr. Justice PAINE in *Pike v. Miles*, 23 Wis., 164, when considering the effect of a conveyance by the husband to his wife of the homestead. He says that such a

" conveyance cannot be held fraudulent as to creditors, for the reason that, being exempt, it was no more beyond their reach after the conveyance than before." Substantially the same thing is said in *Bond v. Seymour*, 2 Pin., 105, and *Dreutzer v. Bell*, 11 Wis., 118. The following authorities are to the same effect: *Murphy v. Crouch*, 24 Wis., 365; *Hibben v. Soyer*, 33 id., 319; *Smith v. Rumsey*, 33 Mich., 183; *Smith v. Allen*, 39 Miss., 469; *Edmonson v. Meacham*, 50 id., 34; *Crummen v. Bennet*, 68 N. C., 494; *Duvall v. Rollins*, 71 id., 218; *Danforth v. Beattie*, 43 Vt., 138; *Lishy v. Perry*, 6 Bush, 515; *Kuevan v. Specker*, 11 id., 1; *Sears v. Hanks*, 14 Ohio St., 298; *Mannan v. Merritt*, 11 Allen, 582; *Cox v. Wilder*, 2 Dillon, 45. It is claimed that the principle to be extracted from these and other like cases goes only to this extent, that a transfer of exempt property will not be held void as a fraud upon creditors when the effect of such determination will be to put the property in the hands of the fraudulent vendor still exempt; but if the circumstances of the debtor have so changed that he could no longer hold it as exempt if the sale were set aside, then the transfer will be avoided for fraud at the instance of the creditor. It seems to us the true test is, Was the sale, or gift, valid when made? If the ownership and title then passes absolutely from the debtor, so that he cannot afterwards have or claim any benefit from it, the transfer is unimpeachable on the part of creditors. In this case, it is said that while Dr. Carhart might hold the library as exempt as a professional library, he had no right, under the color of a pretended gift of it to his children, to hold it as merchandise for sale. The circuit court did not rule that he had the right to hold it in that manner. On the contrary, in another place the court charged that if the store was Dr. Carhart's, carried on for his benefit, he being the owner of the property, the books in trade, but was carried on in the name of his children, as a cover to keep the property from his creditors, then the books were liable to sale on execution. This charge was also criticised on the argument, though no exception was taken to it, because the question was submitted

whether the store belonged to Dr. Carhart, when there was no claim or pretense that it did. But the court likewise submitted the question whether Dr. Carhart owned the property or books in trade. And while the evidence showed that the plaintiffs had in the store other books for sale besides those they had received from their father, yet the meaning of the charge is plain. As there is no legal restraint upon the debtor against selling or even giving away his exempt property, we cannot see that the motive with which he does it is material, so long as there is no secret trust in his favor.

Our views upon the controlling question in the case render it unnecessary to notice specifically the refusal to give the instructions asked by the defendants. The judgment of the circuit court must be affirmed.

RYAN, C. J. The respondents claimed the chattels in question by gift from their father. There was some evidence tending to show that the gift was colorable only, the beneficial interest of the donor in the chattels remaining. I cannot but think that, in the circumstances, the *bona fides* of the gift ought to have been submitted to the jury. And I think it was not.

The respondents kept a bookstore, in which the chattels in question, which had constituted the donor's exempt professional library, were placed for sale as merchandise. It is true that the learned judge of the court below charged the jury that if the store and the goods for sale in it were the donor's, carried on in the name of his children as a cover to keep the property from his creditors, they were subject to execution against the donor. This charge would include the library in question; but it makes the liability of the library to execution dependent upon the donor's ownership of the store and all the other goods in it. He nowhere submits the question of fraud as against creditors in the gift of the library. On the contrary, he expressly charges the jury that, the library being exempt, the donor had a right to sell it or donate it,

and that it is perfectly immaterial whether he designed to defraud creditors or not; that, the property being exempt, the disposal of it could not defraud creditors, because creditors had no right in it.

It appears to me, therefore, that the question of fraud in the gift was taken from the jury. I understand that a majority of the court give a different construction to the charge. I think any different construction a forced one, which a jury would be most unlikely to give to the charge; and even if correct, the charge was calulated to mislead the jury, and erroneous under the rule in *Hutchinson v. Railway Co.*, 37 Wis., 582.

It was contended in this court, that the charge was correct; that the owner of exempt personal property has a right to transfer his title by gift or sale; and that the question of intent to defraud creditors cannot be objected to the gift or sale, because the gift or sale could not defraud creditors. And in support of this position, the learned counsel cited three cases in this court, *Bond v. Seymour*, 2 Pin., 105; *Dreutzer v. Bell*, 11 Wis., 114; *Pike v. Miles*, 23 id., 164.

*Dreutzer v. Bell* turned upon the conveyance of a homestead by the owner of it to his wife, through a third person; both husband and wife continuing to reside on the property. The court held, as I understand the opinion, that it was immaterial to creditors of the husband whether the exemption was in the husband or the wife; and that, therefore, the intent to defraud was immaterial. *Pike v. Miles* turned upon a direct conveyance by husband to wife. *Dreutzer v. Bell* is approved, but great stress is laid upon the fact that the husband was solvent when the conveyance was executed. These cases are followed by *Murphy v. Crouch*, 24 Wis., 365, in which the conveyance was by a husband and wife to their son, upon the consideration that the son should reside on and cultivate the homestead exemption for the support of all the parties. This was again followed by *Barker v. Dayton*, 28 Wis., 367, which turns chiefly upon the fact that the grantor had abandoned the homestead, and that, as against his divorced wife,

his conveyance was void. The latter case need not, therefore, be considered here.

In the three former cases of homestead exemption, it is very manifest that no fraud upon the homestead law was designed or effected; the homestead right continuing, though transferred to the resident wife or son. In such cases it might be assumed that fraud upon creditors could not exist in law. And it is worthy of notice that the three cases were decided after the passage of chapter 137 of 1858. But I cannot assent to the proposition that the question of fraud as against creditors cannot arise upon the sale of a homestead exemption, when the facts showing such fraud show also fraud upon the exemption law. As where one conveys his homestead to a stranger upon secret trust for himself, with intent to abandon the homestead, or to acquire another homestead, and hold both in fraud of the exemption law.

But whatever may be the rule in regard to the sale of homesteads, it is quite distinguishable from the rule which should govern sales of exempt personal property. The statute of 1858 operates to exempt the proceeds of sale of a homestead exemption, which the debtor intends to use in the purchase of a new homestead. *Watkins v. Blatschinski*, 40 Wis., 347. I know of no statute which would apply the same rule to the proceeds of sale of exempt personal property. See *Kennedy v. Baker*, 3 Pin., 295; *Maxwell v. Reed*, 7 Wis., 582. The statute regulating homestead exemptions operates to make them survive the death of the owner. *Johnson v. Harrison*, 41 Wis., 381. I know of no provision of statute which would apply the same rule to exemptions of personal property. It is therefore quite obvious that the question in this case cannot be governed by the decisions of this court on sales of exempt homesteads.

No case in this court having relation to sales of exempt personal property with intention to defraud creditors, was cited on the argument, and I know of none, except *Bond v. Seymour*, *supra*. That case was really decided by a majority of the court on other grounds; and the position that exempt personal

property could not be transferred in fraud of creditors, appears to have been added as mere makeweight. It is true that the chief justice agreed to the judgment on that ground only. But what is said by the court and by the chief justice on the subject, must be read in the light of the facts existing in the case. The sale in question in that case was a chattel mortgage, and the question of fraud as against creditors could not affect it. If the mortgage were valid in law, the mortgagee had a right paramount to a subsequent judgment creditor. If the mortgage were void in law, the property remained exempt in the mortgagor. Cases were cited from other states, which I shall not notice. It is enough for me to show that the effect of intent to defraud creditors in the gift or sale of exempt personal property, is an open question in this court.

I concede that, as a general rule, one having exempt personal chattels may give them away or sell them in good faith, without impairing the right of a creditor. But when one having exempt chattels abandons, or is about to abandon, the use of them on which the exemption rests, and, for the purpose of keeping them out of the reach of his creditors, makes a colorable gift or sale of them for his own use, the fraudulent intent will avoid the gift or sale as against creditors. So, too, if the fraud against creditors involve also a fraud upon the exemption law; as where one, having a team exempt by law, makes a colorable gift or sale of it for his own use, for the purpose of acquiring another team for his exemption, and of holding both teams for his own use; the one by way of exemption, and the other under the fraudulent gift or sale.

The statute of exemptions is a wise and humane provision; and when the rights which it gives are fairly and justly exercised, they not only protect the debtor in the decencies of life, but as often tend to the security of creditors as against it. The protection of the statute has enabled many to acquire means of satisfying debts, far beyond the value of exemptions. But the statute sanctions no fraud. And all frauds upon it go, for what they are worth, to endanger the permanency of the statute. And I have felt it my duty to put on record my

emphatic dissent from the broad proposition, that an intent to defraud creditors can never affect the gift or sale of exempt property. "Covin doth suffocate right."

*By the Court.* — The judgment of the circuit court is affirmed.