## OBEDIAH FATHEREE et al. *v.* SAMUEL FLETCHER and WIFE.

1. STATUTE OF LIMITATIONS: HUSBAND AND WIFE.—The right of a *feme covert* to recover her slaves is not barred by three years adverse possession, in this State.

2. HUSBAND AND WIFE: ADVANCEMENT: TRUSTS.—If the husband purchase property in the name of his wife, with his own means, it will be treated as an advancement to the wife; she being incapable in law of holding as trustee for him; and although the transaction may be fraudulent, as to creditors, yet it is good and valid in favor of the wife, as against the husband and his voluntary grantees. See *Warren* v. *Brown*, 25 Miss. R. 66.

3. WITNESS: COMPETENT: WHEN INTEREST BALANCED.—Where the parties claim title to the property in controversy from the same grantor, under different conveyances, executed by him to them, the grantor is as much liable to one party as to the other, upon failure of the title conveyed by him, and is therefore indifferent in point of interest, and may be a witness for either, to impeach the title of the other. See 3 Wend. 388; 12 Maine, 371; 6 Wend. 416. *Quære.*—Should this rule obtain in case of a *sale* to two, by the grantor, he receiving a greater sum from the one than from the other? See *Noel* v. *Wheatly*, 30 Miss. R. 181; 1 Greenl. Ev. §§ 391, 399, 420.

4. SALE: WHEN TITLE VESTS.—The title to slaves is vested in the purchaser upon

the payment of the purchase-money, and the delivery of possession to him; although the bill of sale may not be executed until afterwards.

5. GIFT: DELIVERY OF SLAVE BY PARENT TO CHILD.—Where a parent delivers possession of personal property to the child, upon his marriage, or after marriage, it will be presumed a gift, in consideration of the relationship existing between them. See *Falconer v. Holland*, 5 S. & M. 689.

6. CHANCERY: PLEADING: PARTIES MUST RELY ON TITLE STATED IN THEIR PLEADINGS.—A defendant will not be permitted to rely, at the trial, upon a title inconsistent with the title set up in his answer; and hence, if the parent sue the child to recover possession of a slave, which he had delivered to the child upon his marriage, alleging that such delivery was by way of a loan; and the child in his answer deny the loan, and assert title to the slave, upon the ground that the delivery of the slave was made by the parent in pursuance of a gift to the child by a third person; and if this asserted title of the child be shown to be unfounded, he will not then be permitted to set up, on the trial, that under the circumstances, the delivery of the slave by the parent, was in law a gift.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

The complainants in this case were, Sidney Fatheree, (formerly Fletcher,) and her husband Obediah Fatheree, and Horatio Wise, surviving husband of Mary Wise, (formerly Fletcher;) and Sidney and Mary were the children of defendants. The pleadings and proof are sufficiently stated in the opinion of the court.

*Sharkey* and *Withers*, for appellants,

Cited *Farrel* v. *Perry*, 1 Haywood, 2; *Carter* v. *Rutland*, Ib. 97; *Parker* v. *Philips*, Ib. 451; *Falconer* v. *Holland*, 5 S. & M. 689; 5 Monroe, 382, on the point that the circumstances showed a gift by defendants to complainants. And they cited 1 Greenl. Ev. §§ 398, 399, as authority to show that Hanna was an incompetent witness to impeach his own deed.

*John D. Elliott*, on same side,

Contended, that Hanna was an incompetent witness to impeach the title he had conveyed to the complainants, and cited *Wallton* v. *Shelby*, 1 T. R. 296; *Jordan* v. *Lashbrooks*, 7 Ib. 601; 1 Esp. R. 298; 2 Johns. R. 168, 169; 1 Caines, R. 274; *Churchill* v. *Seuter*, 4 Mass. R. 156.

*Geo. L. Potter*, for appellees,

Contended, that the proof showed that Hanna had no title to the slaves when he made the deed to complainants; and if he did, the gift was void, there being no delivery, and the slaves being in the adverse possession of defendants. See 2 Kent, 438; *Caldwell* v. *Caldwell,* 4 J. J. Marsh, 16; *Stogel* v. *Fugate,* 2 A. K. Marsh. 136; *Young* v. *Fergusson,* 1 Littell, 298. That the fact, (if it exists,) that the money used by Mrs. Fatheree in purchasing the slaves was furnished by her husband, cannot help complainants; for in law, it would be considered as a gift to the wife. *Brown* v. *Warner,* 3 Cushm. 66. The title there being in the wife, the assent of the husband to the gift made by Hanna, could not divest her title. Again, the parties, by their pleading, are not in a situation to rely upon a gift made by any other person than Hanna. They claim their title through him, and no one else; and if his title fails, their's must. See Story, Eq. Pl. § 257.

HANDY, J., delivered the opinion of the court.

The appellants filed their bill in the Superior Court of Chancery, to recover of the appellees certain slaves, claiming title under a deed of gift from John W. Hanna, dated 11th June, 1842, by which the slaves were given to Mary and Sidney Fletcher, the complainants, to remain in the hands of Nancy Fletcher, one of the defendants, until the said Mary and Sidney should marry or become of age. The bill alleges that these parties married, and that the possession of the slaves accompanied and followed the terms of the donation, by which the appellees, having the custody of the persons of said Mary and Sidney, before their marriage, had possession of the slaves belonging to them under the deed. The bill charges that the appellees pretend to have an older and better title, but it is denied, and charged to be forged or ante-dated, and alleges that the slaves were in Warren county at the time the deed was recorded there.

The answer admits the execution of the deed of gift, but denies the right of Hanna to execute it when it was made, and avers that he had previously sold and delivered the slaves to the defendant, Nancy Fletcher, which took place on or about the 24th November, 1841; and before that time, under an agreement of purchase

with Hanna, that the slaves were in her possession, and have continued so ever since; and that the purchase was made with her own means—denies that the slaves were ever in the possession of the complainants, Mary and Sidney Fletcher, except that one of the slaves was loaned by the defendant, Nancy Fletcher, to one of the complainants; denies that she ever consented to the deed of gift executed by Hanna, and denies that the slaves were in Warren county at the date of that deed.

Nancy Fletcher also filed a cross-bill to recover the slave in the possession of the complainants, claiming title to her as set forth in the answer; and averring that the slave was merely loaned to the complainants.

The answer to the cross-bill denies the title of Mrs. Fletcher to this slave; alleges it to be fraudulent, and denies that the slave was loaned, but alleges that she was surrendered by Mrs. Fletcher, in virtue of the appellant's right; and relies on the Statute of Limitations.

Upon final hearing, the chancellor dismissed the complainant's bill, and decreed that the slave alleged by the cross-bill to have been loaned to the complainants, be delivered up by them to the defendant, Nancy Fletcher, and that an account for hire be taken. And from this decree this appeal is prosecuted.

It appears by the proof, that the slaves in controversy were sold at marshal's sale, in November, 1840, as the property of the defendant, Samuel Fletcher, and purchased by William Laughlin, who transferred them to Hanna, in March, 1841, for the same amount of money for which they were purchased at marshal's sale. It is proved by Valentine, a witness for the complainants, that the money furnished by him, and with which Mrs. Fletcher purchased the land, by the sale of which she raised the means to purchase the slaves from Hanna, was advanced by him on ten bales of cotton, placed in his hands, which it is probable were the property of Samuel Fletcher.

Hanna proves that he contracted to sell the slaves to Mrs. Fletcher, and delivered possession to her in 1841, before the date of two receipts, executed by him to her for the purchase-money, dated in November, 1841, and that she has had possession ever

since that time; that the receipts were given when the money was paid to him, which was done by Mrs. Fletcher; that he afterwards executed the deed of gift of 11th June, 1842, at the request of Samuel Fletcher, and merely to gratify him, without any consideration paid, and without the knowledge or consent of Mrs. Fletcher.

L. Price proves that the original papers in relation to the sale by Hanna to Mrs. Fletcher, were destroyed when the receipts, dated in November, 1841, and made by Hanna to Mrs. Fletcher, were executed, and that those receipts were then dated back to 1841. But what was the date or character of the original writings between the parties he does not state.

Sessions proves that after the marshal's sale the slaves were in the possession of Mrs. Fletcher, and have continued so, except one, which has been in the complainant's possession since the year 1840 or 1841. He states that he has seen two papers in relation to the title of these slaves; one an obligation by Hanna to make Mrs. Fletcher a title to the slaves, and others not in controversy here, which was anterior in date to the other; the other was the deed of gift by Hanna, dated 11th June, 1842, and was written by this witness, at the request of Hanna; and as he said, to gratify Samuel Fletcher.

The first question raised in behalf of the appellants is, whether Hanna was a competent witness to invalidate the title created by his own deed to the appellants.

Here the witness had executed conveyances to both parties, and they both claimed under him. He was as much liable to one party as to the other, upon the failure of title conveyed by him, and he was therefore indifferent in point of interest. *Frost* v. *Hill,* 3 Wend. 388; *Eldridge* v. *Wadleigh,* 12 Maine, 371; *Jackson* v. *Packard,* 6 Wend. 416.

But if he was bound on his implied warranty to Mrs. Fletcher, and not bound by the terms of the deed of gift, he was rendered competent as a witness for Mrs. Fletcher by the release executed to him before his last deposition was taken.

The next question is, whether the sale was made by Hanna to Mrs. Fletcher before the execution of the deed of gift?

The testimony of Hanna is clear and positive that it was.    But this is said to be disproved by the testimony of Price.    He states merely that "the original papers were destroyed" when he signed his name as a witness to the receipts shown as evidence of Mrs. Fletcher's title, "and new ones given and dated back to 1841." It does not appear when this was done, or what was the date or character of the original papers.    But it may be fairly concluded that it was the obligation spoken of by Sessions as bearing date before the deed of gift, which he saw, and by which Hanna was bound to make title to the slaves to Mrs. Fletcher.    If there was such a contract between the parties, and the possession of the slaves was delivered to Mrs. Fletcher before the date of the deed of gift, and the purchase-money paid, it is clear that her title, so far as the time at which it must take effect is concerned, is superior to that conveyed by the deed of gift.    From all the testimony it is clear that the contract of sale to Mrs. Fletcher, the delivery of possession under it, and the payment of the purchase-money, were made before the date of the deed of gift; and that is sufficient to give her title, whether the receipts by Hanna were executed before or after the date of the deed of gift.

But it is insisted that the slaves, having been purchased through means derived from Samuel Fletcher, must be regarded as his property, and that the conveyance made by Hanna, at his request, for the benefit of the complainants, conveyed a good title; and that the previous sale to Mrs. Fletcher, was substantially for the benefit of her husband, and the property was held by her as trustee for him, and subject to his disposition.

Conceding, what does not clearly appear, that the property must be considered as having been purchased entirely by the means of Fletcher, it is not denied that the conveyance to her was made with his assent.    At the instance of a creditor of Fletcher, the property could have been subjected to his debts, if purchased by his means.    But as between husband and wife, a purchase made by him in her name, is to be treated as an advancement made to her for her separate use, and the wife cannot be a trustee for the husband.    *Warren* v. *Brown et al.*, 25 Miss. R. 66.    And of course,

he would have no power to dispose of the property without the concurrence, and in derogation of the rights of the wife.

As to the slaves mentioned in the cross-bill, and there alleged to be in the complainant's possession by loan, the answer to the cross-bill denies the loan, claims title in the complainants, and relies on their possession since 1845, as a bar to the recovery.

We have already seen that the title to this slave passed to Mrs. Fletcher, and the question then arises whether her claim is barred. by the possession of the complainants, for more than three years, under adverse claim. It appears by the record, that during all this period Mrs. Fletcher was a *feme covert*, and being under that disability, her right would not be barred by limitation until the lapse of the requisite period after the removal of her disability.

It follows, therefore, that the title being in Mrs. Fletcher, and her right not being barred by the Statute of Limitations, she was entitled to recover the slave from the complainants; unless the complainants acquired title by gift from Mrs. Fletcher.

The general rule is, that where a parent delivers possession of personal property to a child, upon marriage or after marriage, it will be presumed to be a gift in consideration of the relationship. *Falconer* v. *Holland*, 5 S. & M. 689. And this is especially the case, where the possession remains with the child a great length of time. This presumption would have prevailed in favor of the complainants in this case. But they do not claim title under a gift, but set up a claim adverse to the title of Mrs. Fletcher, and inconsistent with the idea of a gift from her. And they cannot be permitted to have the benefit of the presumption of a gift, when they do not found their claim upon a gift, and assert a title inconsistent with a gift.

It follows, from these views, that the decree of the chancellor is correct, and it is, therefore, affirmed.

NOTE.—Under what circumstances a delivery of personal property, by parent to child, will be considered a gift; see *Stewart* v. *Cheatham*, 3 Yerg. 60; *Johnson* v. *Dilliard*, 1 Bay, R. 232; *Avarnt and Wife* v. *Swett*, 2 Ib. 528; *Moore* v. *Davoney*, 3 Hen. & Munf. 127; *Torrence* v. *Graham*, 1 Dev. & Bat. 284; *Pendleton* v. *Mills*, Geo. Decis. Part 2, p. 166; *Adams* v. *Hayes*, 2 Iredell, R. 361; *Green* v. *Harris*, 3 Ib. 210; *Milliken* v. *Green*, 5 Missouri R. 489; *M'Cluney* v. *Lockhart*, 4 M'Cord, 251; *Bell* v. *Strother*, 3 Ib. 506; *Byrd* v. *Ward*, 4 Ib. 228.