W. H. WEATHERSBEE et als. v. O. C. FARRAR.

*Mortgage—Priority—Registration—Feme  Covert—Estoppel.*

1. The rule recognized in admiralty giving salvors a prior lien on the vessel and cargo saved by their exertions, is not recognized at common law.

2. So where there were two mortgages on a crop of cotton, and the first mortgagee advanced money in order to save the crop and prepare it for market, in excess of the amount secured by his mortgage, he is not entitled to the amount of such advances to the exclusion of the second mortgagee.

3. In such case, the registration of the second mortgage is notice to the first mortgagee, and it is immaterial that he does not have actual notice.

4. Unless the element of fraud is present in the declarations or conduct of a *feme covert*, upon the faith of which conduct another reasonably might rely, and has in fact relied to his injury, she is not estopped, as a *feme covert* cannot be estopped by a contract, or anything in the nature of a contract.

5. So, where a *feme covert* second mortgagee was ignorant of the dealings between the mortgagor and first mortgagee until they were consummated and finished, and upon learning of them was only silent, she is not estopped by her silence from asserting her rights under the second mortgage.

*(Towles* v. *Fisher*, 77 N. C., 437; *Burns* v. *McGregor*, 90 N. C., 225; *Loftin* v. *Crossland*, 94 N. C., 76: *Boyd* v. *Turpin*, Ibid., 137; cited and approved).

CIVIL ACTION, heard upon exceptions to the report of a referee, by *Shepherd, Judge,* at Spring Term, 1886, of EDGECOMBE Superior Court.

The plaintiff Weathersbee, on January 1st, 1882, being indebted to the defendant, Farrar, in the sum of $1,051.50, and desiring to raise a further sum to meet other liabilities, and to carry on farming operations during that year, executed his note to the latter, in the sum of $3,500, and gave a mortgage to secure the sum, and provide for its payment at maturity, in which is conveyed the crop to be grown on the land, with the stock and agricultural implements used thereon. The note was discounted and the interest taken therefrom in advance, at the rate of 9 per cent. per annum, by the Pamlico Banking and Insurance Company, and the proceeds used, except a small sum otherwise appropriated, to the mortgagor's benefit in the payment of his indebtedness, including that due to the mortgagee.

On March 4th, 1882, the said Weathersbee, being also indebted to the *feme* plaintiff, his wife, in the aggregate of principal money, besides several years of interest on its constituent parts, of $2,360.25, to provide for its payment, executed a deed in trust to the plaintiff H. L. Staton, conveying a tract of land of 400 acres, and, in subordination to the prior

mortgage, the crop and other personal property therein men-
tioned. These deeds were promptly proved and registered
after being made.

On October 14th, 1882, the said Weathersbee delivered to
the defendant, of the crop grown on the farm, 13 bales of
cotton, of the value of $650.23, the proceeds of which, it was
agreed between them, should go in discharge of unsecured
advances in money and supplies to be used in housing and
fitting the crop for market, but without the assent or knowl-
edge of his wife, or of her trustee. On the same day, the
defendant paid Weathersbee $80 in money, and furnished
needed supplies of the cash value of $14.50. Additional
advancements were afterwards, and previous to January 1st,
1883, furnished on the same terms, and under like necessi-
tous circumstances, in order to the gathering in of the crop
and preparing it for market.

During the months of November and December, at differ-
ent times, a further delivery was made to the defendant of
59 bales of the cotton grown on the farm, of the value of
$2,664.53, which, as well as the preceding delivery, were
applied to the running account between the parties, but
without any specific arrangement to that effect.

The defendant had no actual knowledge of the second
deed in trust, and of the posterior lien it created upon the
crop and other personal property, until after all the cotton
was received by him.

On January 25th, 1883, the defendant rendered to the
mortgagor an account of their transactions, in which the
latter is charged with the money and supplies, and credited
with the proceeds of sale of the 72 bales of cotton, in which
is shown an excess of $90.30 in favor of the credits. The
account was delivered to Weathersbee, then confined to his bed
by sickness, in the presence of his wife, who heard the con-
versation that passed between them, and thus knew how the
cotton had been appropriated, and she made no objection to

the account. But previous to that day, she did not know of the appropriation, nor did she at any time consent to this disposition of the trust fund, nor had her trustee any information of it, nor did he assent to what was done to the prejudice of the rights of the *feme cestui qui trust* under the deed to him. The *feme* plaintiff became a free trader on January 26th, 1883, and on February 6th, paid part of her own store account to Farrar & Pippin, and agreed to pay the residue of $259.39. The personal property, besides the cotton, was sold on the last day of January, for the sum of $1,622 95.

This is a summary and condensed statement of the facts found and reported by the referee under the order of reference, as corrected and modified by the Court, upon the hearing of the numerous exceptions taken by the defendant thereto, who appeals from the judgment.

*Mr. John Devereux, Jr.,* for the plaintiffs.
*Mr. George Howard,* (*Mr. John L. Bridgers* also filed a brief,) for the defendant.

SMITH, C. J., (after stating the facts). Out of these facts arise the questions of law which alone are open for revision on the appeal; and, without considering them separately in detail, we will endeavor to extract the substance, and dispose of them all.

The present action, begun on September 28th, 1883, by Weathersbee, the grantor, and the trustee and *feme* creditor secured in the last deed, against Farrar, the mortgagee, has for its object the taking of an account of the administration of the trust funds in his hands; and the recovery of whatever excess there may be, after discharging the mortgage debt and the expenses incidental to the execution of the trust. To this end, the reference was ordered, and upon the findings and rulings, the sum of $1,097.18 ascertained to be in the hands of the defendant, after allowing all admitted and

just charges, which belongs to and should be paid over to the parties interested in the second deed.

I. The first contention in the argument for the appellant is, that inasmuch as the disallowed advances were essential to the gathering and securing of the crop, and without which it might have been lost, or its quantity and value greatly reduced, this expense should be provided for and come out of the sales, as a paramount claim. Such is the doctrine in admiralty, in favor of those who by personal efforts and at great peril, save vessels and cargoes exposed to shipwreck and the dangers of the sea. But it is not a principle of the common law, nor recognized when in conflict with statutory regulations in reference to liens.

As soon as the trust fund satisfies the demand to which it is primarily devoted, the surplus belongs to the second or trust deed, and cannot be diverted to any other use. The right to this appropriation is given by the law, and is outside and independent of the defendant's knowledge of the existence of the deed. But it was on the registry, accessible to him, the very purpose of which was to prevent the excuse now made. It was his own fault if, without making any inquiry, he chose to withdraw the cotton from his own attaching trusts, and improperly use it in the payment of an un-secured debt. This he is not permitted to do, to the detriment of the plaintiffs, and the assumed necessity for the expenditure in the preservation of the cotton, without the concurrence of the *feme* plaintiff and her trustee, cannot have the effect of crowding out of its place their right to what remains after satisfying the first mortgage.

II. It is next insisted, and this is pressed with earnestness, that the *feme* plaintiff has acquiesced in this disposition of the fund, and that it would be a fraud in her now to set up any opposition thereto.

We do not find in the facts any support given to the argument. The *feme* plaintiff had no information of any arrange-

ment between the defendant and her husband, whereby these advances were to be put in front of her demands, and paid from the sales of the crop. Nor did her trustee know of it, or give an implied assent even, to the misappropriation. The transaction was entered upon and consummated between them, before either the trustee or the *feme* plaintiff were aware of what was going on. Her information was obtained, when in January the account in this form was presented to her husband, and it became the subject of conversation at his sick bed, and then she was silent. No declaration or act of hers induced the making the advances, or involves any ingredient of fraud. What was done was simply between her husband and the defendant, and can have no binding effect upon her.

The rule invoked in his aid cannot have the same rigorous application to one under coverture and incapable of making a personal contract except in special cases, as it has to such as are under no disability.

In *Towles* v. *Fisher*, 77 N. C., 437, RODMAN, J., after examining the cases cited in Biglow on Estoppel, says: "They all concur, that a married woman who is under a disability to contract, cannot be estopped by anything in the nature of a contract. To estop a married woman from alleging a claim to land" (the case then before the Court), "there must be some positive act of fraud, or something done upon which a person dealing with her, or in a manner affecting her rights, *might reasonably rely, and upon which he did rely, and was thereby injured.* No one can reasonably rely upon the contract of a married woman, or on a representation of her intentions, which at best is in the nature of a contract, and by which he must be presumed to know that she is not legally bound."

Unless the element of fraud is present in the declarations or conduct of a woman under coverture, upon the faith of which another has acted to his own injury, and which may

reasonably be supposed to induce him to act, she cannot lose any of her just rights of property. *Burns* v. *McGregor,* 90 N. C., 225; *Loftin* v. *Crossland,* 94 N. C., 76; *Boyd* v. *Turpin,* Ibid., 137, and cases cited.

These views, we believe, cover the essential subject-matter of the rulings upon issues of law, and leave little more to be said. The account is adjusted upon the basis of requiring the defendant to pay over what is left of the proceeds of the entire trust estate, including the cotton and other personal articles, after discharging his mortgage, towards the debts due the *feme* plaintiff, deducting, however, therefrom her own personal indebtedness, and this is in our opinion a proper settlement of the controversy.

In the rulings there is no error, and the judgment is affirmed.

No error.                                        Affirmed.