\*THURBER. WHYLAND & CO. v. W. D. LAROQUE and wife.

*Equity—Trust—Consideration—Husband and Wife—Betterments—Estoppel—Lien—Deed—Fraud—Homestead.*

1. The general principle that a consideration is necessary to raise a trust, and that equity will protect against one holding the legal title, the beneficial interest of him who pays the purchase-money for property, had its origin in the old doctrine governing uses.

2. The rule that a resulting trust is raised in favor of the person who pays the purchase-money for land, though the title may be made to another, is subject to the qualification that when the person who pays the price is under legal, or even, in some instances, moral obligation to maintain the person in whose name the purchase is made, there is a presumption in equity that the purchase is intended as an advancement or gift to the recipient.

3. The relationship between husband and wife is a sufficient consideration to raise this presumption, when the former furnishes the consideration and causes the conveyance to be made to the latter; but the presumption is repelled by proof that the deed was executed to defraud the husband's creditors, whose right to subject the interest resulting in favor of the husband is subject only to his right of homestead.

4. Where the husband contracted to pay three hundred and fifty dollars for a tract of land, paid forty dollars and executed three notes, signed also by his wife, in the aggregate for three hundred and ten dollars, and caused a deed to be made for the whole to the wife, who immediately joined him in a mortgage deed to the grantor, reconveying the land to secure the payment of the notes, and she paid out of her own separate funds $150, and he $160, in addition to the $40 previously paid: *Held*, that the wife had the absolute title to three undivided sevenths, and held four undivided sevenths in trust for the husband, because he was embarrassed with debt, and that the right of the creditors was postponed only in favor of his right to a homestead.

5. In cases where the purchase-money for land is furnished by different persons, each holds an equitable interest in proportion to the amount of purchase-money paid by him, and the relative interests are not changed by the fact that one subsequently advances a sum for betterments placed on the land, in excess of his proportional interest.

---

✻ Head-notes by AVERY, J.

6. The land in this case will not be sold and the fund arising from the sale divided, because the husband expended over eight hundred, while the wife expended only two hundred in improvements placed on the land, after the purchase.

7. The wife is not estopped, because of her silence while the improvements were being made, from denying that the creditors had a lien to the extent of the husband's expenditures for betterments, nor does the law imply a contract on her part to pay any portion of the costs of said improvements.

8. The wife cannot subject her separate real estate, or any interest therein, to any lien, except by deed, in which the husband joins, with privy examination as prescribed by law, and she will not be allowed to do indirectly what the law prohibits her from doing directly.

9. The equitable interest of the husband, the resulting trust in four undivided sevenths, could not be sold to satisfy his creditors without allotting his homestead in it, if no homestead had been previously laid off to him, the debtor in such case being entitled to claim a homestead in the equity, as he may do where his deed conveying the legal, as well as equitable estate in the land, is set aside for fraud.

This was a CIVIL ACTION, brought by the plaintiffs, judgment creditors of the defendant W. D. LaRoque, to subject the land described in the fifteenth paragraph of the complaint, or the money expended by the said W. D. LaRoque in purchasing said land, and in placing improvements thereon, to the satisfaction of their judgments, tried by *Bynum, J.,* at the November Term, 1889, of the Superior Court of LENOIR County, upon the issues set out in the record proper.

The facts admitted and found by the jury were that the said W. D. LaRoque had contracted, by parol, on or about the 1st day of January, 1886, to purchase said land (being a lot in the town of Kinston) from one Washington, and on the 12th day of May, 1886, paid said Washington $40 in cash in part payment of the purchase-money, and at the same time executed to him three notes jointly with his wife, the *feme* defendant, for the balance of the purchase-money,

and at different dates, one for $110 and two others for $100 each, making a total of $350 as the purchase-money. That, on the said 12th day of May, 1886, the said Washington, at the instance and request of the said W. D. LaRoque, conveyed the said lot of land to the *feme* defendant Annie P. LaRoque in fee, taking from the said defendants a mortgage on the land to secure the $310 unpaid purchase-money; that afterwards the said W. D. LaRoque paid $160 of the purchase money, and expended $650 in placing a residence and other permanent improvements upon the said land, all being his own money, and without any consideration therefor on the part of his said wife; that the said conveyance by the said Washington to the said Annie P. LaRoque was without any consideration upon her part moving to the said W. D. LaRoque, other than her signing the said notes of $310 and the mortgage to said Washington to secure the unpaid purchase-money; that the said Annie P. LaRoque, after the said 12th of May, 1886, paid $150 of the said purchase-money, and expended $250 in placing the said residence and improvements on said lot, all being of her own separate property; that there was allotted to the defendant W. D. LaRoque, on or about the 3d day of February, 1887, his personal property exemption, under an execution issuing upon the judgment of the plaintiff G M. Lamb & Co., set forth in the complaint, to the amount of $316; that all the judgments in the amendment to the complaint are true and correct, as therein stated; that some of the debts on which the judgments of the plaintiffs mentioned in the complaint were rendered, were contracted before the 12th of May, 1886, and all of them during the year 1886; that the house and improvements were not completed, but were being made during 1887; that the said W. D. LaRoque was insolvent at the time of the commencement of this action; that defendant W. D. LaRoque claimed his homestead in the said lot and improvements, to the extent of his interest, as shown

above; that said Annie P. LaRoque claimed the property as her own, by virtue of the deed of conveyance from Washington to her.

Upon the admissions of defendants, and the verdict of the jury, as set out in the record proper, the plaintiffs moved, " upon the admission in the answer and the findings of the jury, that the land conveyed by Washington to Annie P. LaRoque be declared subject to a lien for the sum of six hundred and sixty-six dollars, the balance of the sum paid by W. D. LaRoque for the purchase of said land and in placing improvements thereon after said conveyance, to-wit, eight hundred and ten dollars, after deducting therefrom the deficiency in value of the personal property exemptions heretofore allowed him, to-wit, one hundred and eighty-four dollars; that said land be sold for the satisfaction of said sum of six hundred and twenty-six dollars, and that said sum, when realized, be applied in payment of the plaintiffs' judgments"; which motion was refused, and the plaintiffs excepted.

Plaintiffs then moved, " upon an admission and findings, that the said land be declared subject to a lien for the sum of four hundred and sixty-six dollars, the balance of the sum paid by W. D. LaRoque for the improvements on said land after said conveyance, to-wit, the sum of six hundred and fifty dollars, after deducting therefrom the deficiency in value of the personal property exemption heretofore allowed him, to-wit, one hundred and eighty-four dollars; that the land be sold for the satisfaction of said sum of four hundred and sixty-six dollars, and that said sum, when realized, be applied in payment of the plaintiffs' judgment"; which motion was refused, and the plaintiffs excepted.

The plaintiffs then moved, " upon an admission and findings, that the said land be declared subject to a lien for the sum of three hundred and ten dollars, the balance of the sum paid by W. D. LaRoque for the purchase of said land

and the improvements thereon after said conveyance, to-wit, eight hundred and ten dollars, after deducting therefrom his personal property exemption of five hundred dollars; that said land be sold for the satisfaction of said sum of three hundred and ten dollars, and that said sum, when realized, be applied in payment of the plaintiffs' judgments"; which motion was refused, and the plaintiffs excepted.

Plaintiffs then moved, "upon said admissions and findings, that the said land be declared subject to a lien for the sum of one hundred and fifty dollars, the balance of the sum paid by W. D. LaRoque for the improvements thereon after said conveyance, to-wit, six hundred and fifty dollars, after deducting therefrom his personal property exemption of five hundred dollars; that said land be sold for the satisfaction of said sum of one hundred and fifty dollars, and that said sum, when realized, be applied in payment of the plaintiffs' judgments"; which motion was refused, and plaintiffs excepted.

The Court then, on motion of the defendants' counsel, rendered judgment—

1. That the defendant Annie P. LaRoque is the owner of $\frac{400}{1250}$ of the said house and lot and improvements thereon.

2. That the defendant W. D. LaRoque was, and is, entitled to his homestead exemption, to be set apart and allotted to him and his family according to law, in the remaining interest, to-wit, $\frac{850}{1250}$ of said lot, house and improvements, against the judgments of the plaintiffs, or executions issuing thereon.

3. That the defendants recover their costs of suit, to be taxed by the Clerk.

1. The plaintiffs excepted to so much of the judgment in this case as adjudges that the defendant Annie P. LaRoque is the owner of $\frac{450}{1250}$ of the said house and lot and the improvements thereon.

105—20

2. To so much of said judgment as adjudges that the defendant W. D. LaRoque was, and is, entitled to his homestead exemption in said lot, to be set apart and allotted to him and his family according to law, in the remaining interest, to-wit, $\frac{850}{1250}$ of said lot, house and improvements, against the judgments of the plaintiffs, or executions issuing thereon.

3. To so much of said judgment as adjudges that the defendants recover of the plaintiffs their costs of the action.

4. To the judgment as a whole.

Plaintiffs appealed.

*Mr. G. V. Strong,* for plaintiffs.
*Mr. George Rountree,* for defendants.

Avery, J.—after stating the facts: The position that no resulting trust was raised by the transaction between Washington and the defendants—husband and wife—LaRoque, for which plaintiffs' counsel contended, is untenable. The general principle that a consideration is necessary to raise a trust, and that equity will protect against one holding the legal title, the beneficial interest of him who pays the purchase-money for property, had its origin in the old doctrine governing uses  *Patton* v. *Clendenin,* 3 Murph., 68; *Pegues* v. *Pegues,* 5 Iredell Eq., 418.

" When a person has in his possession money or other personal estate belonging to another, or where a title in lands is made to him, based on a consideration, the ownership whereof is in another, he holds the personal estate or the legal title to the land as trustee for the true owner." 2 Bishop Mar. W., § 119; *Moseley* v. *Moseley,* 87 N. C., 69.

The rule that a resulting trust is raised in favor of the person who pays the purchase money for land, though the title may be made to another, is subject to the qualification that where the person who pays the price is under a legal, or

even, in some instances, a moral obligation to maintain the person in whose name the purchase is made, there is a presumption in equity that the purchase is intended as an advance or gift to the recipient.   2 Pom Eq. Juris., § 1039; 2 Story's Eq., §§ 1197, 1202 and 1203; 2 Bishop M. W., § 121.   The relationship between husband and wife is a sufficient consideration to raise this presumption, when the former furnishes the consideration and causes the conveyance to be made to the latter, but the presumption is repelled by proof that the deed was executed to defraud the husband's creditors, and a resulting trust arises in their favor, subject, however, in this case, to the husband's claim of homestead, if sustained.   The limitation is founded upon the general principle that one must be just before he can be generous, even to his wife, and the valuable consideration which raises the trust in his favor is held to prevail against the good consideration and to make it inoperative till creditors are satisfied and only the rights of the parties remain to be considered.   *Lery* v. *Griffis*, 65 N. C., 236; Perry on Trusts, §§ 148 and 149; *Guthrie* v. *Gardner*, 19 Wend., 414; *Fathern* v. *Fletcher*, 31 Miss., 265; 2 Bishop on M. W., §§ 124, 127.

The doctrine is also based upon the old principle that the equitable interest in land is drawn as if by irresistible magnetic attraction to the person who pays the price, and where it is bought with a mixed fund, the beneficial interest is divided among those who furnish it in the proportion that the amount advanced by each bears to the whole sum.   2 Pom. Eq. Jur., § 1038; 2 Bishop M. W., § 125; *Cunningham* v. *Bell*, 83 N. C., 328; *Lyon* v. *Akin*, 78 N. C., 258.

Where a fund arising from the sale of the wife's separate real estate (before it is impressed by some act of his with the character of personalty), or any other money constituting a part of her separate property, is used in the purchase of land, and the title is taken to the husband, a trust is created

in favor of the wife, there being no presumption that she intended to provide for him.

In the case of *Lyon* v. *Akin, supra,* where the husband married in 1846, bought a tract of land in July, 1848, for $218, and paid $150 of said sum out of the fund arising from the sale of his wife's separate land, and subsequently conveyed the land in the year 1861 to secure a debt, and the mortgagee bought the land at foreclosure sale, it was held that the mortgagee acquired by the purchase the life estate of the husband as tenant by courtesy only. BYNUM, Justice, for the Court, said: "There is a resulting trust at his (the husband's) death to the wife (or her husband, if she does not survive him) to the extent of the purchase money she furnished." In *Cunningham* v. *Bell, supra,* Justice DILLARD announces still more explicitly the principle that the owners of the beneficial estate in land hold interests therein in proportion to their respective advancements in making up a mixed fund for the purchase. The learned Justice says: "The Judge finds as a fact that the payments on the purchase-money secured by the mortgage, so far as made, were made by the plaintiff, as agreed on by means furnished by her (the wife) or derived from her separate property, and thereby an equity arose to the plaintiff *pro tanto,* her payments, and will arise in *toto* on full payment to have the trust enforced in her favor," &c. See also *Case* v. *Codding,* 38 Cal., 191; *Smith* v. *Patton,* 12 W. Va., 541; *Smith* v. *Smith,* 85 Ill., 139; *Miller* v. *Birdsong,* 7 Baxter, 531.

The resulting trust is raised by the payment of a part, or the whole, of the purchase money of land, and does not depend for its existence, or extent, upon the amount subsequently advanced to be expended in improvements placed upon it. An equity was raised in the present case on the ultimate payment of the whole of the price of the land in proportion to the sum paid respectively by each. The mortgage lien being discharged, the *feme* defendant held the

absolute title to three undivided sevenths, by reason of having paid $150, while she held four undivided sevenths of the land in trust for the creditors of the husband, who had paid $200, subject to his claim to a homestead. The law relating to trusts looks only to the payment for the land, and the amount furnished by each, after the original agreement with Washington, for betterments is not a factor in arriving at the equitable interests of the two contributors to the mixed fund. *Francestown* v. *Duning*, 41 N. H., 442; 2 Bish. M. W., § 126; *Rogers* v. *Manning*, 3 Paige, ch. 398; *Sterne* v. *Sterne*, 5 Johns., ch. 18.

It being settled, then, that the wife, on the discharge of the mortgage debt to Washington, had an absolute estate in three undivided sevenths of the land and held four undivided sevenths in trust, two questions are still to be determined:

1. Could the husband, though insolvent at the time, by expending six hundred and fifty dollars in making improvements on the land, subject the undivided interest of the wife, paid for with her own separate funds, to liability to sale at the instance of his creditors, who seek to follow the fund so expended?

2. Was the husband deprived of the right to have his homestead allotted in the other four undivided sevenths, because, when he paid for it, he did not retain property sufficient and available to satisfy the claims then due to his creditors, or because, at best, there is a resulting trust in four sevenths liable immediately for his debts, if not primarily subject to his right of homestead

The three undivided sevenths of the land constituted a part of the separate estate of the *feme* defendant, and if it is charged with a lien for the amount expended on the premises by the husband, it must be because of an implied contract on the part of the wife to pay for them, or because she would be estopped from denying the claim of one who built the houses, or other permanent structures, without

objection from her, and is, in the same way, prevented from resisting that of the creditor, or, lastly, because she is deemed, in law, a party to the fraud perpetrated by the husband, and will not be allowed to derive benefit from it.

In *Scott* v. *Battle*, 85 N. C., 185–189, the rule is laid down in reference to the wife, that "in no case will the law imply a promise on her part, and every one who deals with her is held to do so with knowledge of her liability."

Hence, she is not held liable to restore to any person money expended in improvements on her land, when the person who makes them is presumed in law to know her liability, and not be misled by the idea that she had capacity to contract, in reference to her separate estate, by implication of law. In the recent case of *Farthing* v. *Shields* (decided at this term), Justice SHEPHERD, delivering the opinion, says: "Accordingly, it has been determined that *The Code*, § 1826 requiring the written consent of the husband, in order to affect her real or personal estate, did not confer upon her (even when such written consent was given, or where the liability was for her personal expenses, &c.) the power to make a legal contract. Its object was to require the written consent of the husband, in order to charge in equity her statutory separate estate, on the same principle which requires the consent of the trustee, when the separate estate is created by deed of settlement. *Pippen* v. *Wesson,* 74 N. C., 437; *Flaum* v. *Wallace,* 103 N. C, 296. In the light of these and other decisions, the section should read as follows: 'No woman, during her coverture, shall be capable of making any engagement in the nature of an executory contract, by which her statutory real or personal estate is to be charged in equity, without the written consent of her husband. But where the consideration is for her necessary personal expenses, or for the support of her family, or where it is necessary, in order to pay her ante-nuptial indebtedness, she may so charge such real or personal estate, without such

consent of her husband.' But in view of the express require-
ment of law that the husband and the wife shall join, with
privy examination of the latter, in aliening an interest in
real property, the foregoing construction of the section is, in
the same case, modified in its application to the separate real
estate of the wife, and the Court say that the wife's 'power
to charge her separate real estate by an engagement in the
nature of a contract, is measured and limited by her power
to dispose of the same, and it must follow that if the wife,
with the written consent of her husband, had expressly
charged her statutory separate real estate, it would have been
of no avail without privy examination.'"

She cannot, therefore, subject her land, or any separate
interest therein, to a lien in any possible way but by a regu-
lar conveyance. executed according to the requirements of
the statute, and the law will not allow her to dispense with
these necessary forms and accomplish what she is prohibited
from doing directly, by a silence that will estop her or pre-
vent her from enjoying the benefit of the enhanced value of
her interest because she is supposed to have been a partici-
pant in the fraud of her husband. In *Lambert* v. *Kinnery*,
74 N. C., 348, and in *Littlejohn* v *Egerton*, 76 N. C., 468, this
Court held, in effect, that a debtor could not evade the law
and pass his right to a homestead by any act that amounted
to an estoppel in *pais*, and that he could not waive it in any
way in favor of his creditors "except by a deed in which the
wife should join, with privy examination." *Hughes* v. *Hodges*,
102 N. C., 236–244. Neither can we concur in the view
that the fraud of the husband in expending money which
justly belonged to his creditors, and the silence of the wife
(even if she had known his pecuniary condition, which does
not positively appear), shall have the force and effect of sub-
jecting the wife's interest to sale, when we have said that no
charge or lien upon it could be created except by deed
proven in the regular mode. *Farthing* v. *Shields, supra*

It must be remembered that the land was conveyed to the *feme* defendant on the 12th of May, 1886, and immediately subjected to the lien of a mortgage deed in which she joined her husband to secure the three notes for the residue of the purchase-money. Some of the debts due the plaintiffs' judgment creditors, were contracted before that deed and mortgage were made, while all of them were created during the year 1886. The house and improvements were not completed, but were being constructed during the year 1887. It does not appear that the wife knew that the husband was insolvent, or, indeed, owed any debt except the notes payable to Washington signed by both She expended of her own means one hundred and fifty dollars of the purchase-money, and two hundred and fifty in improvements, the creditors sitting idly by with notice of the nature of the deed and mortgage, and with power at any time to institute against the husband proceedings supplementary to execution, since it appears that all, or nearly all, of the judgments were rendered and docketed in the year 1886, before any money was expended in betterments. We see, therefore, no peculiar hardship in protecting the rights of the *feme* covert against the probable sacrifice of what she has expended on an incomplete house; but, whether the creditors are made to suffer or not, we must adhere to the interpretation placed upon our statutes. In *Farthing* v. *Shields*, the Court said, in reference to the rights of the wife: " As to her not being privileged to commit fraud, there can no fraud grow out of the contract of a married woman. It stands upon its own strength, both in law and equity. If perfect, then well and good; if imperfect, it is an absolute nullity." *Fisher* v. *Towles*, 77 N. C., 438.

So no one should be misled by the conduct of a married woman. He should recollect that she cannot incur liability amounting to a lien on her land, indirectly or directly, and take measures for his own protection accordingly. We are

aware that the decisions in some of the States, two of which were cited and another examined by us, are in apparent conflict with the views we have expressed. It is our duty to construe our statutes and endeavor to make our own interpretations, in the different phases in which we apply them, harmonize. These differences among the Courts often grow out of the varying provisions of the laws of the different States. Cord (in his work on the Legal and Equitable Rights of Married Women, vol. 2, sec. 1287,) stated the principle as follows: "Where the wife has not the power to contract, she cannot by any act of hers estop herself as to her title or right, not even her assent to the gift or dedication of her land for the use of a railroad, by her husband. * * * She could only dispose of or encumber it in the way prescribed by statute. And what she could not deprive herself of by direct and express contract with the defendant, we think it clear that she could not lose by the indirect method of an estoppel in *pais*." *Todd* v. *Pittsburg, &c., Railroad Co.*, 19 Ohio, 514.

Whether the rule, ordinarily applied in transactions between men with reference to fraudulent deceptions, can be made to operate as to married women in any case, without giving an indirect opportunity to alien or encumber, contrary to the statute or not, it is certain that her simple silence in this case, without proof of participation in the fraud, or her failure to prevent her husband from building on the land, does not, according to any adjudication of this Court, work an estoppel or create an encumbrance for which the wife's interest can be subjected to sale. See *Weathersbee* v. *Farrar*, 97 N. C., 106; *Loftin* v. *Crossland*, 94 N. C., 76, *Burns* v. *McGregor*, 90 N. C., 222; *Towles* v. *Fisher*, 77 N. C., 437; *Rencher* v. *Wynne*, 86 N. C., 268; *Clark* v. *Hay*, 98 N. C., 424; *Boyd* v. *Turpin*, 94 N. C., 137.

It has been settled that if the wife refuses to perfect the title to land taken in exchange by another for land vested in

her, she will be held bound to carry out the trade by paying the difference in price. *Burns* v. *McGregor, supra.* But while equity can, by refusing its aid, or otherwise, and will prevent a *feme covert* from taking an unconscientious advantage, it cannot give to her acts the effect of repealing a statute.

It was held in *Commissioners* v. *Bennett*, 68 N. C., 494, that a debtor who attempted to convey his land to defraud his creditors did not thereby forfeit his right to a homestead, when the creditor caused the fraudulent deed to be declared void; and, in subsequent adjudications, this ruling has been repeatedly approved, either directly or by implication. *Whitehead* v. *Spivey*, 103 N. C., 66; *Burton* v. *Spiers*, 87 N. C., 87; *Duvall* v. *Rollins*, 71 N. C., 218; *Lambert* v. *Kinnery*, 74 N. C., 348; *Gaster* v. *Hardie*, 75 N. C., 460.

In *Dortch* v. *Benton*, 98 N. C., 190, this Court held that a purchaser of land under an executory contract of sale, who had paid a part of the purchase-money, became immediately the equitable owner of the land, subject to the lien of the purchase-money due, and was entitled to have his homestead allotted in the land. The ruling in that is drawn in question in the discussion of the present case. Pomeroy (in his work on Equity Jurisprudence, vol. 1, § 372) says, in reference to the interest of vendor and vendee: " If the contract is made upon an actual valuable consideration, and complies in other respects with the requisites prescribed by equity, then, as soon as it is executed and delivered, the vendee acquires an equitable estate in the land, subject simply to a lien in favor of the seller as security for the payment of the price, while the vendor becomes equitable owner of the purchase-money. There is in this case, as in the last, an equitable conversion. The vendee's interest is at once converted into realty, with its features and incidents, while the vendor's interest is, to the same extent, personal estate."

In *Gaster* v. *Hardie*, 75 N. C., 460–461, BYNUM, J., says: " For it is well settled that, as between the debtor and the creditor,

the former is entitled to his exemption, whether he has made no conveyance of his property at all, or has made one fraudulent as to his creditors. It is equally well settled that the debtor is entitled to the homestead in an equity of redemption in lands only subject to mortgage debt."

In a case not unlike the present, the Supreme Court of Illinois held that an insolvent debtor would not be deprived of the benefit of the homestead exemption where he purchased the property with his own money, merely because he procured the title to be vested in his wife., *Chipperly* v. *Rhodes*, 53 Ill., 350. This view of the law was sustained by DILLARD, C. J., in *Cox* v. *Wilder*, 11 Wis., 114

In *Rooks* v. *Hoke*, 3 Lea (Tenn.), 302, it was held that where a husband voluntarily conveys land to his wife to hinder and delay his creditors, the right of homestead was not defeated. See also *Boynton* v. *McNeill*, 31 Grattan, 456; Thompson on Homestead; § 331.

The case of *Hixon* v. *George*, 18 Kansas, 253, was one in which an insolvent debtor expended his money for land, took the title in the wife's name, and constructed improvements on the land with his own means, and yet the Court sustained his claim to a homestead in the land.

If a mortgagor can claim a homestead in an equity of redemption, the legal estate being in the mortgagee, as this Court has held, the objection that a homestead cannot be assigned in a mere equity will not lie, and if the interest of a vendee is in equity, the ownership of land, a resulting trust, must be also an equitable estate. If the objection be based upon the idea that, as between husband and wife, the presumption is that the purchase-money for land, to which title was made to her by direction of the former, was advanced for her benefit, and until the creditors move, the whole estate, legal and equitable, is in her, the reply is, that just in the same way every conveyance made to defraud creditors is good *inter partes*. So that if any fraudulent grantor is enti-

tled to a homestead after his conveyance is declared void by
the Courts, the same reasoning must make it lawful to allow
a homestead to be allotted in cases like the present.

We conclude, therefore, that a homestead should be allot-
ted in the equitable estate in four undivided sevenths of the
land, and that the wife is the owner of three undivided
sevenths. The judgment below must be modified accord-
ingly. Neither of the parties can recover costs in this Court.

Judgment modified.


SHEPHERD, J.—dissenting: I am unable to concur in that
part of the opinion which declares that the defendant W. D.
LaRoque is entitled to a homestead exemption. Neither
can I agree that the equitable relief sought in this action
is based upon the idea that there is a resulting trust in
favor of either the debtor or creditor.

The proposition is, that if an insolvent husband purchases
land with his own money, and, for the purpose of defraud-
ing his creditors, procures the title to be made to his wife,
he is, as against creditors, seeking to subject the fund so
fraudulently withdrawn, entitled to a homestead exemption
of one thousand dollars.

The authorities cited from Virginia, Tennessee and
Thompson on Homestead, are where the legal title was in
the debtor and fraudulently conveyed by him. They stand
upon the same principle as *Crummen* v. *Bennett*, 68 N. C.,
494, which is based upon the ground that the fraud of the
debtor has been ineffectual to change his relation to the
property, and for that reason he is entitled to a homestead.
It is plain that such authority has no application where the
debtor never had the legal title, and if it can be used at all
in a case like the present, it tends to show that only the per-
sonal property exemption can be allowed the debtor since, if
the transaction is void for fraud, the investment fails, leav-

ing the money impressed with the usual characteristics and incidents of personal property.

The Kansas case only decides that the debtor is entitled to the homestead as against subsequent creditors, and this, together with the Illinois and Wisconsin cases, is founded upon the peculiar laws governing the homestead in those States. Any one who reads a work on homestead exemptions cannot fail to be struck with the infinite variety of laws upon the subject, and the consequent conflict of the decisions of the Courts of the various States. Mr. Thompson, in his preface to his work on Homestead Exemptions, well says that "the result is a confused and almost inexplicable system, indicative of different intentions, theories and designs on the part of the law-makers, with regard to the practical application of the law, expressed generally without any very successful attempt at the definition of terms or manifestation of meaning and purpose. The inevitable consequence is a conflict of judicial construction and interpretation, but a pretty general agreement of the Courts and the legal profession in sentiments of disgust for the unsatisfactory and uncertain conditions of this department of jurisprudence." How, after this candid expression of the eminent author, any weight can be attached to such decisions outside of their own States, I am at a loss to understand. Especially is this true when such decisions are utterly inconsistent with the old and well settled principles applicable to the fraudulent acts of insolvent debtors, the effect of such transactions in reference to their property, and the principles governing the remedies which must be pursued by the creditors.

It is but natural, therefore, that the Court should place but little reliance upon such authorities, and endeavor to base its ruling upon some rational theory in harmony with the principles of law and equity as uniformly expounded by the jurists of this State. This it has sought to do by placing

the decision upon the ground that the debtor has some interest in the land which he has fraudulently procured to be conveyed to the wife. It is upon this theory that *Dortch* v. *Benton* was decided, the Court resting its opinion upon the idea that the husband had acquired an equitable estate by a valid contract of purchase. Whatever may be the facts of that case, it is clear that this is the principle of the decision.

This principle of an equitable estate in the debtor is a safe one, if sustained by the facts, and it is manifest from the concluding part of the opinion in this case that the decision is grounded upon that theory alone. It is too plain for argument that the husband has no such equity by reason of his being a vendee under a contract of sale, for, at the very time he made his first payment, the title was made to the wife, and, previously, he had nothing whatever but the bare parol agreement of the owner, Washington, that he would sell him the land at a certain price. So far from having any estate, he did not have even a mere right in equity. Another reason why this view cannot be sustained is, that he never paid any money under such parol contract, but the money sought to be subjected was all paid at the time of, or subsequent to, the conveyance to the wife. Moreover, it would be absurd to say that the husband can be a vendee under an executory contract, while, at the same time, his wife is holding the land under an executed contract, made, at his instance, by the same vendor. It must follow, therefore, that, if the said defendant has any interest at all in the land, it must be by virtue of a resulting trust. And this seems to be the view of the Court. This resulting trust is finely said to be "based upon the idea that the equitable interest in land is drawn as if by irresistible magnetic attraction to the person who pays the price." This magnetism, however, is powerless in the present case, and so far from any equitable interest being attracted to the insolvent hus-

band, it is, under the circumstances, absolutely repelled and driven beyond his reach.

There are two reasons for this.   One is, because the money paid is presumed to be an advancement to the wife.   In such case, there can, in the absence of evidence to the contrary, be no resulting trust.   This is too plain to require the citation of authority, and is conceded in the opinion of the Court.   The other reason is, that the transaction being fraudu·lent, "equity will not assist the perpetrator of the fraud, and consequently will decline to enforce the trust, which would otherwise result, were the transaction a *bona fide* one, for his benefit."   Bispham's Eq., 124; *Page* v. *Goodman*, 8 Ired. Eq., 16; *Rhem* v. *Tull*, 13 Ired., 57; *Gowing* v. *Rich*, 1 Ired., 553; *Dobson* v. *Erwin*, 1 D. & B., 569.   It being conclusively settled, then, that there can be no resulting trust for the husband, it is finally insisted that a trust results in favor of the creditors.

This is the law in New York, Minnesota, Wisconsin, Kansas, Indiana, Kentucky and perhaps other States; but this is only by reason of statutes expressly providing that such a trust shall result for the benefit of the creditors.   Pom. Eq., 1042; Tiedman Real Property, 500, notes.

In some States it is even held that the interest of the fraudulent debtor in such a case may be sold under execution.   That no such trust results to a creditor, and that equity does not assist him upon any such principle, is so well settled by the decisions of this Court, as well as the text-books, that it is a matter of surprise to me that there can be the least doubt upon the subject.   In the leading and instructive case of *Dobson* v. *Erwin*, *supra*, RUFFIN, C. J., says: "The debtor himself, then, could not claim a reconveyance upon the foot of such a trust.   It is not deemed a valid trust fit to be executed in a Court of Equity.   For the same reason, one claiming as a creditor of the debtor, could not insist on it, by way of affirming the alleged agreement

and asking the execution of the trust. The Court does not recognize any such trust for the purpose of enforcing it, as such, in favor of any person, because, if it existed, it is covinous and avoids the deed itself. *A creditor cannot, therefore, be relieved upon a bill which supposes the existence and validity of such a trust* * * * So, on the other hand, as we think clear, there can be no such trust, and relief in equity would be founded, *not on it,* but on a ground entirely different, namely, the fraudulent intent to withdraw the debtor's estate from his creditors."

The remedy, says the same distinguished jurist, in *Gowing* v. *Rich, supra,* is founded on "the right in equity *to follow the funds* of the debtor." To the same effect is *Rhem* v. *Tull, supra,* in which PEARSON, J., says: "In fact it could not, as a trust, be recognized in favor of any person; a Court of Equity could not recognize and enforce it as a trust, even in favor of a creditor." So in *Wall* v. *Fairley,* 77 N. C., 105–107, RODMAN, J., says that the words "real property" cannot be construed to cover land in which the defendant never had any estate or right, and as to which his creditors have only a right in equity to follow a *personal fund* which has been converted into the land as a gift to his children, and in fraud of them." This language is quoted with approval by DILLARD, J., in *Dixon* v. *Dixon,* 81 N. C., 323–324, who then proceeds as follows: "But in the case of a suit to reach the funds of a debtor not capable of being applied under an execution, as in this action, to reach the money of the judgment debtor vested in the land conveyed to the wife, there is no lien by the judgment or execution, and the jurisdiction arises because there is no lien and the action, when instituted, at most, is looked on as one to follow the funds of the debtor."

The consensus of judicial opinion, therefore, is that in a case like ours there can be no resulting trust, either in favor of the debtor or the creditor, and that the purchase-money

paid by the husband can be followed into the land as a personal fund only.

These principles being so abundantly established, I am at a loss to conceive by what judicial magic this personal fund, which has been, and can *only* be, followed as such, is, at the moment it comes within the reach of the creditor impressed with the character of realty and protected by the homestead exemption. There is nothing in the Constitution which authorizes such a doctrine On the contrary, the distinction between real and personal property in respect to exemptions is there expressly recognized in the different amounts allowed the debtor in each species of property, and I can find nothing in that instrument which in the slightest degree alters the well-settled principles by which real and personal estate is to be distinguished.

The debtor, then, having no equitable estate by reason of his mere verbal agreement to purchase, and there being no resulting trust either in his favor or in that of his creditor, it must follow that he has no equitable interest whatever in the land, as such, which can be asserted by or through him. The purchase-money, therefore, is treated as a personal fund fraudulently withdrawn from his creditors. Being followed only as such personal fund, it must necessarily be treated as such to the end. This being so, the debtor would be entitled only to the personal property exemption.

In conclusion, I will add that, even if there were no creditors, and the conveyance had been made to a stranger, there could only be a resulting trust to the extent of the forty dollars paid at the time of the conveyance. Here, all of the money, except this small amount, was paid sometime after the conveyance was executed. In order to constitute a resulting trust, "the consideration must be paid by the person claiming the resulting trust at the time of the transaction of sale or conveyance. Any subsequent payment of the

consideration by such person, even though he has been compelled to do so as surety of the grantee, will not raise a trust." Tiedman on Real Prop., 500; Adams' Equity, 7 ed., 33, note.

Believing, as I do, that the ruling of the Court is based upon reasoning wholly inconsistent with the clear and well-defined distinction and principles so thoughtfully elaborated and interwoven into our jurisprudence by the great judicial minds of the past, and that a departure from them can only result in confusion and incongruities, I have been constrained to enter my dissent, and to state some of the reasons upon which it is founded.